IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
No. 4:23-CV-00193-D

| | |
|---|---|
| RODNEY D. PIERCE and MOSES MATTHEWS, <br><br> Plaintiffs, <br><br> v. <br><br> THE NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections, JEFF CARMON III in his official capacity as Secretary of the North Carolina State Board of Elections, STACY "FOUR" EGGERS IV in his official capacity as a member of the North Carolina State Board of Elections, KEVIN N. LEWIS in his official capacity as a member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN in her official capacity as a member of the North Carolina State Board of Elections, PHILIP E. BERGER in his official capacity as President Pro Tem of the North Carolina Senate, and TIMOTHY K. MOORE in his official capacity as Speaker of the North Carolina House of Representatives, <br><br> Defendants. | **LEGISLATIVE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXPEDITE** |

      The Court should deny Plaintiffs' motion to expedite. Plaintiffs have yet to file a preliminary-injunction motion. No one other than Plaintiffs have any idea about the contents of this prospective motion, the number of witnesses, including expert witnesses, that will be tendered, or the size and contents of any prospective brief or other prospective supporting evidence. Yet they request that the Court blindly bless an "emergency" briefing and hearing schedule for this unseen motion that only guarantees that no defendant can sufficiently respond and ensures that

there is no possible way for the Court (or any defendant) to determine the proper amount of time that defendants should have to respond. By design or for other reason, Plaintiffs nonsensically demand that briefs opposing a motion not yet filed be submitted *one* business day—after Thanksgiving weekend—to accommodate an emergency of Plaintiffs' own creation. Redistricting litigation "is not a game of ambush." *In re Landry*, 83 F.4th 300, 303 (5th Cir. 2023). This Motion is nothing more than an invitation to play that game. In opposition, Legislative Defendants[1] state as follows:

1. At issue in this case are two districts in North Carolina's state senate redistricting plan, enacted as S.B. 758. *See* D.E. 5 at 1; D.E. 6 at 3. On Wednesday, October 18, 2023, S.B. 758 was filed by sponsor Senators Ralph Hise, Warren Daniel, and Paul Newton. On Thursday, October 19, 2023, S.B. 758 was referred to the Senate Redistricting and Elections Committee and heard for discussion that day. The committee chairs, Senators Hise, Daniel and Newton called for comments on the bill from the public. On Monday, October 23, 2023, the bill was again heard in Senate Redistricting and Elections Committee and passed in Committee. Prior to passage, the Committee accepted two amendments to S.B. 758 districts in the Durham/Chatham County Grouping and the Guilford/Rockingham County Grouping. These amendments were offered by Democratic members of the Senate Redistricting and Elections Committee, Senator Mayfield and Senator Garrett respectively. On Tuesday, October 24, 2023, the Senate passed S.B. 758 on second reading. On Wednesday, October 25, 2023, the Senate passed S.B. 758 via voice vote on third reading. That same day the House passed S.B. 758, and it became law. [Compl. ¶ 2.][2]

---

[1] Legislative Defendants are Philip E. Berger in his official capacity as President Pro Tem of the North Carolina Senate, and Timothy K. Moore in his official capacity as Speaker of the North Carolina House of Representatives. D.E. 1, Compl. ¶¶ 19–20.

[2] The Legislative History of the Bill can be found in the documents and proceedings contained in these links: https://ncleg.gov/BillLookUp/2023/S758 ; https://ncleg.gov/Documents/518/16003 ;

2. Plaintiffs have waited for over a month since the introduction of the S.B. 758 and nearly a month since passage of S.B. 758 to bring this suit and have yet to file their corresponding motion for preliminary injunction. At no point prior to filing the Complaint did Legislative Defendants hear from the Plaintiffs or their counsel, including after Senators Hise, Daniel, and Newton called for public comment on the proposed Senate Plan. Instead, Plaintiffs wait until the eve of a holiday, and a mere two weeks before candidate filing to cry "emergency." The situation Plaintiffs find themselves in is entirely of their own making. Granting Plaintiffs' proposed schedule would itself create a genuine emergency by depriving Legislative Defendants of the right to have a full and fair opportunity to analyze and respond to Plaintiffs yet-to-be-filed Motion for Preliminary Injunction, and if necessary, submit expert rebuttal evidence. Nothing in the record, or the law, demands such a deprivation of Legislative Defendants' due process rights.

3. Delay for delay's sake is reason enough to deny Plaintiffs' motion to expedite. But for all the delay in getting this complaint and motion on file, Plaintiffs make this audacious request while leaving unacknowledged how one-sided their request is. While allowing themselves two additional days to file their preliminary injunction motion, Plaintiffs propose a schedule in which briefs (and, apparently, all evidence) in opposition to their motion will be due on November 27. [D.E. 5 at 2]. They fail to mention that the day after they intend to file their motion is Thanksgiving. In short, they have allowed themselves more than four weeks to prepare their preliminary-

---

and https://ncleg.gov/Committees/CommitteeInfo/SenateStanding/154 . A copy of the map enacted in SB 758 can be found here:
https://ncleg.gov/Files/GIS/Plans_Main/Senate_2023/SL%202023-146%20Senate%20-%2011%20x%2017%20Map.pdf The Court may take judicial notice of all of these documents and proceedings. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27, (1959); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004).

injunction papers and demand a response in two court days, all while asking the Court to agree to expedite while failing to file the very motion that will form the basis of their request.

4. Imposing a burden on Legislative Defendants and defense counsel is the only purpose that explains this motion. Plaintiffs allege on the face of their Complaint that the statistical information supporting their action was presented to the General Assembly "[a]t the time of the 2023 redistricting" in submissions by "the Southern Coalition for Social Justice," which included "expert analysis." Compl. ¶ 38. Plaintiffs do not mention that the evidence provided by the Southern Coalition for Social Justice did not include evidence of two of the three *Gingles* preconditions (a compact minority group capable of forming a majority in a single member district or evidence of legally significant racially polarized voting), included no endogenous elections, was entirely based on state-wide data, and sought a completely different configuration of districts (a proposed crossover district) than the majority Black district remedy sought by Plaintiffs here.

5. Plaintiffs also allege that the plan "facially violates Section 2 of the" Voting Rights Act and that the merits of their case are "obvious." D.E. 6 at 2, 5. If Plaintiffs were so confident in that position, they should have sued within days of October 25, the date the senate plan was enacted, or even before enactment, as prior Plaintiff groups have done. But they still have not moved for a preliminary injunction or submitted any evidence substantiating their claims. Why did Plaintiffs wait (and still now continue to wait) until the day before Thanksgiving to drop their motion and then demand a response in two days? Pure lawfare.

6. The Court should reject this motion for many reasons. The first, and most obvious, is parity. If Plaintiffs and their team of lawyers and experts needed more than a month to prepare preliminary-injunction papers, the defense teams will need even more time to prepare responses

4

(or at least the same amount of time). "After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016).

7. Secondly, Plaintiffs ignore the nature of litigation under Section 2 of the Voting Rights Act, which they seek to enforce. *See* Compl. ¶¶ 84–90. U.S. Supreme Court precedent calls for "a flexible, fact-intensive" inquiry entailing "an intensely local appraisal of the design and impact of the contested electoral mechanisms." *Thornburg v. Gingles*, 478 U.S. 30, 46, 78 (1986) (quotation marks omitted). Section 2 rejects any "single-minded" rule in favor of "a more refined approach." *Allen v. Milligan*, 599 U.S. 1, 26 (2023). That inquiry cannot be conducted on a record built over a Thanksgiving weekend.

8. Among other things, expert analysis of voting patterns is essential to any Section 2 inquiry. Plaintiffs have not provided the Court a polarized-voting analysis, which is essential to their claims. And their odds of success—far from being "obvious"—are very low: the U.S. Supreme Court affirmed a finding by the district court in *Cooper v. Harris* which found the absence of legally significant racially polarized voting in the 2001 and 2011 versions of Congressional District 1, both of which included all of the North Carolina counties found in Plaintiffs' proposed illustrative district. *See Harris v. McCrory*, 159 F. Supp.3d 600, 624-25 (M.D.N.C. 2016), *affirmed* 581 U.S. 285, 301–06 & n.5 (2017). Moreover, in the state court case of *Common Cause v. Lewis*, Plaintiffs' expert, offered by the same counsel representing plaintiffs here, found there was no legally significant racially polarized voting in 7 of the 8 counties in Plaintiffs proposed illustrative district. Plaintiffs will therefore face steep odds in their efforts to prove legally significant polarized voting in areas of the state where their own expert testified it did not exist just a few years ago. In any event, it will not be possible for defense-side experts to be located and hired in time to prepare any analysis for the Court in a few days and certainly not over a

holiday weekend that most Americans celebrate. Nor could the data to support that work be obtained in the time frame Plaintiffs demand. To adopt Plaintiffs' schedule would deny the defense any opportunity to mount a case.

9. And the odds against Plaintiffs' success continue to mount. Plaintiffs have produced no cohesive illustrative plan, much less the underlying data for analysis, and the snapshots included in the Complaint are troubling to say the least. Though they do not admit it, Plaintiffs' proposal would break up county groupings mandated by *Stephenson v. Bartlett,* 355 N.C. 354, 562 S.E.2d 377 (2002) and its progeny, creating significant ripple effects. For instance, Plaintiffs' Demonstration District A would break up the county grouping consisting of Vance County, Franklin County, and Nash County. That change alone could require re-grouping most if not all the remaining groupings and ripple throughout the entire state senate map. Plaintiffs nonchalantly assert this remedy is "obvious" but there is no "obvious" way to draw the rest of a map essentially obliterated by their cavalier inclusion of Vance County in the proposed district. And perhaps most troubling, Plaintiffs' Demonstration District B-1 on its face cannot even meet the numerosity requirement in *Gingles.* [Compl. ¶49]. While Plaintiffs allege that the Black voting age population in Demonstration District A is 51.47%, when it comes to Demonstration District B-1 Plaintiffs conspicuously leave out the exact percentage, alleging instead that the Black voting age population "is slightly less than 50%." [*Id.*]. Even more, Plaintiffs fail to even plead that their allegedly forthcoming illustrative plan can comply with bedrock principles of one-person-one-vote.

10. Plaintiffs predictably do not identify any Section 2 case that has proceeded as they unreasonably demand. The U.S. Supreme Court recently decided a case concerning *one* district, and it necessitated a seven-day preliminary-injunction hearing that occurred two months after the

legislature finalized congressional districts, involving 17 live witnesses, 43 lawyers, more than 1,000 pages of briefing, and about 350 exhibits. *See Allen v. Milligan*, 599 U.S. 1, 16 (2023); *Landry*, 83 F.4th at 306 (describing *Allen*). In *Landry*, a district judge pushed the envelope beyond that, and the Fifth Circuit responded with a writ of mandamus to ensure fair proceedings. 83 F.4th at 306–08. The Supreme Court unanimously denied a subsequent motion to stay that writ. *Robinson v. Ardoin*, __S. Ct.__, No. 23A281, 2023 WL 6886438 (U.S. Oct. 19, 2023). Plaintiffs not only invite, but demand, the same error here.

11. Plaintiffs' proposal would, in addition, work an undue hardship on the defense team. Counsel for Legislative Defendants are preparing for a multi-week bench trial in Louisiana, which is set to commence November 27, *see Nairne v. Ardoin*, 22-cv-178, D.E. 110 (M.D. La.), the day Plaintiffs propose Legislative Defendants oppose their still un-filed preliminary-injunction motion. The same counsel are also litigating three election cases in the Middle District of North Carolina with expedited due dates looming in December. *Voto Latino v. Hirsch*, 1:23-cv-00861 (M.D.N.C.); *Democracy N.C. v. Hirsch*, 1:23-cv-00878 (M.D.N.C.); *N.C. Democratic Party v. Hirsch*, 1:23-cv-00862 (M.D.N.C.). And a portion of the team representing Legislative Defendants concluded a six-day redistricting trial on behalf of the Michigan Independent Redistricting Commission on November 8 and are preparing post-trial briefing due December 4. *See Agee v. Benson*, 1:22-cv-00272, D.E. 97 (W.D. Mich.). Plaintiffs' proposed schedule is extremely prejudicial.

12. Plaintiffs do not justify their demands. They devote much of their argument to showing that it is *not* necessary, as (they say) the Court has authority to issue relief closer to the 2024 elections. *See* D.E. 6 at 4–5. Whether or not that is true, Plaintiffs have not justified their own delay or even attempted to explain why the defense should be punished for it. It was *Plaintiffs'*

obligation to "show reasonable diligence," *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018), and they cannot credibly make that showing by proposing an implausible case schedule that is difficult to take seriously.

For these reasons, the Court should deny Plaintiffs' motion to expedite proceedings on a preliminary-injunction motion they have yet to file.

Respectfully submitted this the 22nd day of November, 2023.

8
Case 4:23-cv-00193-D   Document 12   Filed 11/22/23   Page 8 of 10

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Thomas A. Farr
N.C. State Bar No. 10871
Alyssa M. Riggins
N.C. State Bar No. 52366
Cassie A. Holt
N.C. State Bar No. 56505
301 Hillsborough Street, Suite 1400
Raleigh, NC 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3779
phil.strach@nelsonmullins.com
tom.farr@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com

E. Mark Braden*
Katherine L. McKnight*
Trevor Stanley*
Richard B. Raile*
BAKERHOSTETLER LLP
1050 Connecticut Ave., N.W., Ste. 1100
Washington, D.C. 20036
(202) 861-1500
mbraden@bakerlaw.com
kmcknight@bakerlaw.com
rraile@bakerlaw.com

*Counsel for Legislative Defendants*
*\* Notice of Special Appearance Forthcoming*

## CERTIFICATE OF SERVICE

I, Phillip J. Strach, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification to counsel of record.

This the 22nd day of November, 2023.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456