IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-CV-193-D

RODNEY D. PIERCE and )
MOSES MATTHEWS, )
)
              Plaintiffs, )
)
v. ) **ORDER**
)
THE NORTH CAROLINA STATE )
BOARD OF ELECTIONS, et al., )
)
              Defendants. )

On November 20, 2023, Rodney D. Pierce ("Pierce") and Moses Matthews ("Matthews") (collectively "plaintiffs") filed a complaint against the North Carolina State Board of Elections and its five members in their official capacities (collectively "the Board defendants"), Philip E. Berger in his official capacity as President pro tempore of the North Carolina Senate ("Berger"), and Timothy K. Moore in his official capacity as Speaker of the North Carolina House of Representatives ("Moore") (collectively "the legislative defendants") alleging that North Carolina Senate Bill 758 ("SB 758"), which establishes new state Senate districts for North Carolina, violates Section 2 of the Voting Rights Act of 1965, codified at 52 U.S.C. § 10301 ("Section 2") [D.E. 1]. Plaintiffs ask the court to (1) "[d]eclare that SB 758 violates Section 2 of the Voting Rights Act;" (2) "[g]rant preliminary and permanent injunctive relief barring Defendants . . . from enforcing or giving any effect to the boundaries of Senate Districts 1 and 2 as drawn in SB 758, including barring Defendants from conducting any Senate elections using those district boundaries;" (3) "[t]ake actions necessary to order the adoption of a valid state Senate plan that includes a minority opportunity district in

northeastern North Carolina, while leaving intact the current district comprised of Pitt and Edgecombe Counties, in time to use the remedial plan in the 2024 Senate elections (and, as part of the remedial order, waive the one-year residency requirement for candidates under N.C. Const. art. II, § 6, for newly drawn remedial districts);" and (4) "[g]rant such other or further relief the [c]ourt deems appropriate, including but not limited to an award of Plaintiffs' attorneys' fees and reasonable costs." Id. at 21.

On November 20, 2023, plaintiffs filed an "emergency motion" to expedite briefing and the court's decision on plaintiffs' as yet not filed motion for a preliminary injunction [D.E. 5]. Specifically, plaintiffs wanted (1) to require the legislative defendants to file a response to plaintiffs' as yet not filed motion for a preliminary injunction on November 27, 2023 (the Monday after Thanksgiving weekend), (2) to have plaintiffs file a reply on November 28, 2023, (3) to have the court hold a hearing on the as yet not filed motion for a preliminary injunction on November 29, 2023, and (4) to have the court resolve the motion for a preliminary injunction by December 1, 2023. See id. at 1–2. On November 22, 2023, the legislative defendants responded in opposition to plaintiffs' "emergency motion" to expedite [D.E. 12].

On November 22, 2023, plaintiffs filed an amended complaint [D.E. 13], moved to enjoin SB 758 [D.E. 16], and filed a memorandum in support [D.E. 17] and expert reports totaling 406 pages [D.E. 17-1, 17-2, 17-3]. On November 27, 2023, the court denied as meritless plaintiffs' "emergency motion" to expedite [D.E. 23]. In that order, the court observed that plaintiffs failed to explain their slothfulness for waiting 26 days after the General Assembly enacted SB 758 to file suit and waiting 28 days after the General Assembly enacted SB 758 to file a motion for a preliminary injunction. See id. at 2–3. Plaintiffs' "emergency motion" also proposed an unfair schedule and ignored this court's caseload. See id. The court also stated that it "will hold a hearing in due course

2

if one is needed to resolve plaintiffs' motion for a preliminary injunction." Id. at 4.

On December 6, 2023, the legislative defendants moved for an extension of time until December 22, 2023, to respond to plaintiffs' motion for a preliminary injunction [D.E. 25]. On December 7, 2023, plaintiffs responded in opposition [D.E. 26] and the legislative defendants replied [D.E. 27]. On December 8, 2023, the court granted the motion for an extension of time until December 22, 2023. See [D.E. 28]. On December 11, 2023, plaintiffs filed a letter with the court citing "this case['s] . . . extraordinary public importance" and requesting that the court resolve plaintiffs' motion for a preliminary injunction by December 29, 2023. [D.E. 29] 1. On December 22, 2023, the legislative defendants responded in opposition to plaintiffs' motion for a preliminary injunction [D.E. 39] and filed exhibits totaling 340 pages [D.E. 39-1 to 39-8]. On December 22, 2023, the Board defendants informed the court of their schedule concerning the 2024 North Carolina elections and took no position on plaintiffs' motion for a preliminary injunction [D.E. 40, 41]. On December 26, 2023, plaintiffs replied and asked the court to resolve their motion for a preliminary injunction by December 28, 2023 [D.E. 42].

The court is reviewing plaintiffs' motion, plaintiffs' exhibits, the legislative defendants' response and exhibits, the Board defendants' schedule, and plaintiffs' reply. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Whether plaintiffs are likely to succeed on the merits and to establish the other three requirements for a preliminary injunction is not as clear as plaintiffs suggest. See, e.g., [D.E. 17] 14 (arguing plaintiffs are "overwhelmingly likely to prevail" and will "easily satisfy" the governing standard). As for demonstrating a likelihood of success on the merits, plaintiffs must

3

demonstrate, inter alia, that the minority group is "sufficiently large and geographically compact to constitute a majority in a reasonably configured district." Allen v. Milligan, 599 U.S. 1, 18 (2023) (cleaned up). "A district will be reasonably configured . . . if it comports with traditional districting criteria, such as being contiguous and reasonably compact." Id. The minority group also must show that "the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." Thornburg v. Gingles, 478 U.S. 30, 51 (1986); see Allen, 599 U.S. at 18. Courts refer to this Gingles factor as "racially polarized voting." See, e.g., Covington v. North Carolina, 316 F.R.D. 117, 169 (M.D.N.C. 2016) (three-judge court), aff'd, 581 U.S. 1015 (2017). The parties hotly dispute whether plaintiffs' minority group is sufficiently large and geographically compact to constitute a majority in a reasonably configured district, particularly in light of the North Carolina Constitution's Whole County Provision as interpreted by the Supreme Court of the United States and the Supreme Court of North Carolina. See Bartlett v. Strickland, 556 U.S. 1, 7–14 (2009) (plurality opinion); Stephenson v. Bartlett, 355 N.C. 354, 381–86, 562 S.E.2d 377, 396–98 (2002); compare [D.E. 17] 15–18, and [D.E. 17-1], and [D.E. 42] 2–7, with [D.E. 39] 13–18, and [D.E. 39-6]. The parties also hotly dispute whether racially polarized voting exists in the counties in Senate District 1 and Senate District 2 in SB 758. Compare [D.E. 17] 18–20, and [D.E. 17-2] ¶¶ 11, 16–31, and [D.E. 42] 7–9, with [D.E. 39] 18–23, and [D.E. 39-7] 2, 5–15. In 2016, a three-judge district court examined this same region of North Carolina and found no evidence of racially polarized voting. See Harris v. McCrory, 159 F. Supp. 3d 600, 624–25 (M.D.N.C. 2016) (three-judge court), aff'd sub nom. Cooper v. Harris, 581 U.S. 285 (2017). In fact, according to the three-judge court that reviewed the issue of racially polarized voting, "precisely the opposite occurred . . . [and] significant crossover voting by white voters supported the African-American candidate." Id. at 625. The parties also hotly dispute whether plaintiffs can show, under the totality of the circumstances,

4

"that the political process is not equally open to minority voters." Allen, 599 U.S. at 18 (quotation omitted); compare [D.E. 17] 20–26, and [D.E. 42] 9–10, with [D.E. 39] 23–25. Finally, the parties hotly dispute whether plaintiffs have met the other requirements for a preliminary injunction and how Purcell v. Gonzalez, 549 U.S. 1 (2006) (per curiam), applies. Compare [D.E. 17] 27–30, and [D.E. 42] 11–12, with [D.E. 39] 25–29. In light of these disputes, and now that the motion is fully briefed, the court finds that a hearing on plaintiffs' motion for a preliminary injunction would aid the court's decisionmaking process.

On November 20, 2023, plaintiffs initially asked this court to resolve their as yet unfiled motion for a preliminary injunction by December 1, 2023. See [D.E. 5] 2. On November 27, 2023, the court rejected as meritless plaintiffs' "emergency motion" to expedite. See [D.E. 23]. On December 11, 2023, plaintiffs then asked the court to resolve their motion for a preliminary injunction by December 29, 2023. See [D.E. 29]. On December 26, 2023, plaintiffs asked the court to resolve their motion for a preliminary injunction by December 28, 2023. See [D.E. 42] 3.

The United States District Court for the Eastern District of North Carolina is the busiest United States District Court in the Fourth Circuit and the fourth-busiest United States District Court in the United States by weighted filings per judgeship. See U.S. Courts, Federal Court Management Statistics, September 2023, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2023 (last visited Dec. 29, 2023). Each judge on this court has over 1,000 cases. The court declines plaintiffs' invitation to rush to a decision on the merits by December 28, 2023. Indeed, plaintiffs' motion for a preliminary injunction was not fully briefed until 9:26 p.m. on December 26, 2023. Instead, the court will employ a judicious deliberative process, including holding a hearing on the plaintiffs' motion for a preliminary injunction. The hearing will permit the court to hear from the advocates and to have the advocates answer the court's questions after the

5

court has had sufficient time to review the 835 pages of filings[1] concerning plaintiffs' motion for a preliminary injunction.

In sum, the court SHALL HOLD a hearing on plaintiffs' motion for a preliminary injunction [D.E. 16] on Wednesday, January 10, 2024, at 10:00 a.m. in courtroom one of the Terry Sanford Federal Building, 310 New Bern Avenue, Raleigh, North Carolina.

SO ORDERED. This 29 day of December, 2023.

                                                    JAMES C. DEVER III
                                                    United States District Judge

---

[1] This figure does not include the brief of proposed amicus curiae Governor Roy A. Cooper and Attorney General Joshua H. Stein. See [D.E. 31-1]. Responses to that motion [D.E. 31] are due on January 2, 2024.