# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

RODNEY D. PIERCE and
MOSES MATTHEWS,

        Plaintiffs,

    v.

THE NORTH CAROLINA STATE BOARD
OF ELECTIONS, *et al*.,

        Defendants.

Case No. 4:23-cv-193-D

---

## MEMORANDUM IN SUPPORT OF LEGISLATIVE DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE "DEMONSTRATION DISTRICT E" AND RELATED EXPERT OPINION

This motion calls on the Court to correct an abuse of the expert-disclosure rules. To support their Voting Rights Act claim, Plaintiffs served an opening expert report from Blakeman Esselstyn with four Demonstration Districts he created (labeled A through D). Two other experts, Drs. Jonathan Mattingly and Loren Collingwood, analyzed and worked from those Demonstration Districts in their own opening reports. In rebuttal, Legislative Defendants' expert, Dr. Sean Trende, critiqued the Demonstration Districts and exposed flaws in them. Rather than just respond to those critiques in his rebuttal report, Esselstyn created a new *fifth* Demonstration District (labeled E). Mattingly and Collingwood also analyzed and worked from District E in their rebuttal reports. But Legislative Defendants' experts have no opportunity to respond to this new plan or these new opinions. Because an expert is not entitled to re-do deficient analysis under the guise of "rebuttal," the Court should strike "District E" and related expert opinions and issue an order *in limine* barring Plaintiffs from offering opinions or evidence concerning "District E" at trial.

**NATURE OF THE CASE**

Plaintiffs commenced this action on November 20, 2023, challenging North Carolina's First and Second Senatorial Districts under Section 2 of the Voting Rights Act. Plaintiffs filed their operative Amended Complaint on November 22, 2023 (D.E. 13), and moved for a preliminary injunction (D.E. 16). The Court denied their motion on January 26, 2024 (D.E. 61), and Plaintiffs appealed (D.E. 62). The Fourth Circuit affirmed on March 28, 2024 (D.E. 68).

On April 1, 2024, the parties submitted proposed scheduling orders (D.E. 70), under which Plaintiffs' opening expert reports would be due on May 31, 2024. (D.E. 70-2 at 2). Meanwhile, Plaintiffs sought *en banc* reconsideration in the Fourth Circuit, leading that Court to stay its mandate on April 12, 2024 (D.E. 71). This Court did not enter a scheduling order while the mandate was stayed. However, on May 31, 2024, Plaintiffs voluntarily served opening expert reports.

On June 18, 2024, the Fourth Circuit denied *en banc* reconsideration (D.E. 77), and issued its mandate on June 26, 2024 (D.E. 78). On July 2, 2024, the Court adopted a Scheduling Order (D.E. 81) setting trial for February 3, 2025, and pretrial deadlines. The Order made Plaintiffs' "expert disclosures and reports" due July 16, 2024, Defendants' "expert disclosures and reports" due August 16, 2024, and Plaintiffs' "rebuttal expert reports" due August 30, 2024. *Id.* at 1-2.

**FACTUAL BACKGROUND**

To prevail on a § 2 claim, Plaintiffs must satisfy three preconditions. The first requires proof that the "minority group [is] sufficiently large and [geographically] compact to constitute a majority in a reasonably configured district." *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (citation omitted). To that end, Plaintiffs' expert, Esselstyn, produced an opening report with four

Demonstration Districts, labeled A through D, and extensive analysis of those Districts. Ex. A[1],

Esselstyn Rep. at 14-32. Esselstyn opined that each Demonstration District has a Black Citizen

Voting Age Population (BCVAP) of at least 50%. *Id.* at 15-24.[2] Plaintiffs concurrently served two

other opening expert reports. The first, from Mattingly, proposes that county groupings required

under North Carolina law can be adjusted to accommodate the Demonstration Districts. Ex. B[3],

Mattingly Rep. at 6-10. The second, from Collingwood, analyzes whether Demonstration Districts

are likely to perform for minority voters. Ex. C[4], Collingwood Rep. at 20-23.

Legislative Defendants served a rebuttal report from Trende opining that Esselstyn could

not prove to a reasonable degree of certainty that two Demonstration Districts—B and D—had a

BCVAP of at least 50%. Ex. D[5], Trende Rep. at 23-24. One problem is that Esselstyn used out-of-

date ACS data (the 2020 five-year estimate) to compute BCVAP. The most recent data, the 2022

five-year estimate, reports the BCVAP of Demonstration Districts B and D below what Esselstyn

reported. *Id.* at 23. Those 2022 five-year estimates were available "months" before Esselstyn wrote

his report, "are aggregated from the years 2018, 2019, 2020, 2021, and 2022," and therefore

"centered on 2020," *id.* at 23, the year of the decennial census.

On August 30, 2024, Esselstyn served a "rebuttal" report. Esselstyn acknowledged that the

"Black CVAP percentages in my Demonstration Districts B and D are lower using the updated

2022 tabulation than they were using the 2020 tabulation," Ex. E[6], Esselstyn Rebuttal Rep. at 2,

---

[1] Attached as **Exhibit A** is Esselstyn's May 31, 2024, opening expert report.
[2] Legislative Defendants dispute that BCVAP, instead of BVAP, is the proper measurement and reference it only because Esselstyn relied upon it for Demonstration Districts B and D, which have BVAPs under 50%. Esselstyn Rep. at 18, 24. As he concedes, "it is not uncommon for the [BCVAP] for a region to be higher than that region's BVAP." *Id.* at 14 n.6.
[3] Attached as **Exhibit B** is Mattingly's May 31, 2024, opening expert report.
[4] Attached as **Exhibit C** is Collingwood's May 31, 2024, opening expert report.
[5] Attached as **Exhibit D** is Trende's August 16, 2024, rebuttal expert report.
[6] Attached as **Exhibit E** is Esselstyn's August 30, 2024, rebuttal expert report.

and conceded he would "no longer offer [District B] as a majority-Black district" as a result. *Id.* at 8. Esselstyn blamed his failure to use the current 2022 ACS five-year estimates in his opening report on the fact the "Redistricting Data Hub" did not publish a "disaggregated version" of that dataset until June 24, 2024. *Id.* at 4. In deposition, he conceded that the Census published the 2022 ACS dataset on January 23, 2024, and admitted that he—a Yale-educated GIS professional—knew how to disaggregate data, had done so in prior work, and could have done so here. Ex. F[7], Esselstyn Dep. at 56:9-15, 151:14-23; 152:2-8. Also, Plaintiffs' expert reports were due on July 16, 2024, three weeks *after* the Data Hub published the disaggregated data, so Esselstyn had time to use it.

In Esselstyn's rebuttal, he created a new Demonstration District, District E, which he contends has a BCVAP greater than 50%, and he offered detailed analysis of District E akin to what he offered of A through D in his opening report. Ex. E at 8-13. Plaintiffs also served "rebuttal" expert reports from Mattingly and Collingwood with similar analyses of District E as their opening reports provided for Districts A through D. Ex. G[8], Mattingly Rebuttal Rep. at 2-3; Ex. H[9], Collingwood Rebuttal Rep. at 26-32. Legislative Defendants have no opportunity under the Court's scheduling order to provide reports responsive to these so-called rebuttal reports.

## ARGUMENT

The Court should exclude Demonstration District E and expert opinion concerning it because it is improper rebuttal material that will (if admitted) prejudice Legislative Defendants. Plaintiffs are not entitled, under the guise of a "rebuttal" expert report, to re-do deficient expert analysis to meet their burden of proof. The 2022 ACS data was available by July 16, 2024, when Esselstyn's opening report was due. Esselstyn could have included District E with his opening

---

[7] Attached as **Exhibit F** is a full condensed transcript of Esselstyn's deposition per Judge Dever's practice preferences.
[8] Attached as **Exhibit G** is Mattingly's August 30, 2024, rebuttal expert report.
[9] Attached as **Exhibit H** is Collingwood's August 30, 2024, rebuttal expert report.

report and did not. A rebuttal report is not the time to introduce brand new material to meet Plaintiffs' Voting Rights Act burden, but Plaintiffs are transparently attempting to introduce evidence that cannot be fairly vetted in the expert-discovery process. This case has been pending for almost a year. Esselstyn had, as of July 16, 2024, offered *two* expert reports—his preliminary-injunction report, D.E. 17-1 (Nov. 22, 2023, Esselstyn Rep.), and his present opening expert report, Ex. A—where he presented at least *four* Demonstration Districts that Plaintiffs contend satisfied the first *Gingles* precondition. The fifth Demonstration District comes too late, and it should be excluded along with all expert opinion concerning it.

## I. ESSELSTYN CANNOT INTRODUCE A NEW DEMONSTRATION DISTRICT IN REBUTTAL

Plaintiffs served a rebuttal report from Esselstyn a month after the deadline for opening expert reports, containing new opinions and analysis in support of Plaintiffs' case-in-chief. But Esselstyn's introduction of a new Demonstration District within his "rebuttal" report exceeds the permissible scope of rebuttal, and cannot be justified as proper rebuttal.

Rule 26 "anticipates that litigants will disclose expert evidence necessary to support their case-in-chief in the initial round of expert disclosures." *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6542730, *3 (C.D. Cal. June 29, 2016). Rule 26 requires parties to produce, in their initial expert disclosure, "a complete statement of all opinions the witness will express and the basis and reasons for them," together with "the facts or data considered by the witness in forming them," and other items required by Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). A "'preliminary' report is not contemplated by the Rule," and an opening expert report that falls short of providing a complete statement of the opinions to be expressed improperly leaves "Defendants open to unfair surprise." *Smith v. State Farm Fire & Cas. Co.*, 164 F.R.D. 49, 53-54 (S.D. W.Va. 1995). Compliance with this procedure is vital. "Rule 26 disclosures

are often the centerpiece of discovery in litigation that uses expert witnesses," and a litigant who "fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005) (quotation omitted).

"Pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii), a party shall disclose any rebuttal or surrebuttal reports solely to contradict or rebut evidence on the same subject matter identified by the other party." *United States v. Thompson*, No. 5:15-HC-2253-FL, 2015 WL 13857160, *2 (E.D.N.C. Oct. 29, 2015). The scope of "rebuttal" evidence "is defined as 'evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party.'" *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed.1990)). Accordingly, "[a] rebuttal or reply expert report is proper if the intent of the report is 'solely to contradict or rebut evidence on the same subject matter identified' by the opposing party's expert report." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. 2013) (citation omitted).

Thus, "[a] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *McKiver v. Murphy-Brown LLC*, No. 7:14-CV-180-BR, 2018 WL 1832964, *1 (E.D.N.C. Apr. 17, 2018) (quotation and citation omitted). *See also Wise v. C.R. Bard, Inc.*, No. 2:12-cv-01378, 2015 WL 461484, *2 (S.D.W. Va. Feb. 3, 2015) (same). In particular, "'[t]estimony offered only as additional support to an argument made in a case in chief'—or evidence for an argument that should have been made in the case in chief—'is improper on rebuttal.'" *Gravitt v. Mentor Worldwide LLC*, 342 F.R.D. 130, 135 (N.D. Ill. 2022) (quoting *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008)). Otherwise, "the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Id.* (quoting *Braun v. Lorillard Inc.*, 84 F.3d 230, 237 (7th Cir. 1996)).

In particular, "'[a] rebuttal report is not the time to change methodologies to account for noted deficiencies; instead, it is to respond to criticisms of such methodologies.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 4272430, *2 (N.D. Cal. Aug. 15, 2016) (quoting *Bowman v. Int'l Bus. Mach. Corp.*, No. 1:11-CV-0593-RLY-TAB, 2013 WL 1857192 at *7 (S.D. Ind. May 2, 2013)); *see also Grace Christian Fellowship v. KHJ Investments Inc.*, No. 07-C-0348, 2008 WL 2412981, *1 (E.D. Wis. June 12, 2008) ("rebuttal testimony" is not "an opportunity for the plaintiff to correct any oversights in its case-in-chief"). In federal practice, "[a reply rebuttal report] does not . . . permit an expert to correct mistakes based on information that was available to the expert well in advance of the issuance of his report." *Snider-Jefferson v. Amigo Mobility Int'l, Inc.*, No. 2:15-CV-406, 2016 WL 4424954, *4 (E.D. Va. Aug. 17, 2006), *aff'd*, 678 F. App'x 91 (4th Cir. 2017).

The introduction of a new Demonstration District E via rebuttal is therefore barred. Esselstyn had all the information he needed to prepare Demonstration District E prior to the due date for his opening report and a new map is not a proper response to Dr. Trende's criticism; it is impermissible "additional support for [Plaintiffs'] case in chief," attempting to correct an oversight in Plaintiffs' case-in-chief. *McKiver*, 2018 WL 1832964, at *1.

In his opening report, Esselstyn drew his Districts right to the 50% line, and for two of his Districts—B and D—used BCVAP, computed using five-year Census ACS estimates instead of the gold-standard decennial census data used to compute BVAP, to claim they were majority-Black. He reported his District B had a BCVAP of 50.19% and District D had a BCVAP of 50.81%, with each having a BVAP under 50%. Ex. A, Esselstyn Rep. at 19, 24. By cutting it close and then relying on outdated 2020 ACS estimates to compute BCVAP, he assumed the risk that current data may show some of his Districts below 50%. That is exactly what happened. Dr. Trende opined

that Esselstyn could not prove to a reasonable degree of certainty that Demonstration Districts B and D had a BCVAP of at least 50%. Ex. D, Trende Rep. at 23-24. Rather than "explain, repel, counteract, or disprove facts" in Trende's report, *Stitt*, 250 F.3d at 897, Esselstyn *agreed* that at least one of his Districts, District B, was "no longer . . . majority-Black," Ex. E, Esselstyn Rebuttal Rep. at 8, and another, District D, saw its "Black CVAP decrease[] using the 2022 ACS data." *Id.* at 9. He then introduced Demonstration District E to attempt to meet Plaintiffs' burden of proof. While claiming "to respond to Dr. Trende," *id.* at 9, he does not say how a new District explains, repels, counteracts, or dispels Trende's methodological criticisms of his original report's Districts. Creating a new Demonstration District E does nothing to resolve the problems with Demonstration Districts B and D. Demonstration District E, and all opinion concerning it, is new material that should have been in opening reports, not rebuttal reports.

Esselstyn "ought to have known that he should not have relied on" outdated ACS data "in rendering his original report." *Crowley v. Chait,* 322 F. Supp. 2d 530, 551 (D.N.J. 2004). He had the 2022 ACS data available to him well in advance of Plaintiffs' July 16th expert-report deadline, and could have incorporated it into his opening report.[10] But he did not. As Legislative Defendants' expert showed, his failure to use current data rendered at least some of his Districts below 50% BCVAP. Esselstyn's "[r]ebuttal testimony does not give him a chance for a 'do over.'" *Id. See also Snider-Jefferson*, 2016 WL 4424954, at *4. His references to District E—and those in Mattingly and Collingwood's rebuttal reports—go beyond the scope of permissible rebuttal and amount to untimely disclosed opening opinion. *See, e.g.*, *Boles v. United States*, 2015 WL 1508857, *2 (M.D.N.C. Apr. 1, 2015) ("[E]xpert reports that simply address the same general

---

[10] Plaintiffs voluntarily served their opening reports on May 31, 2024, before the Court's Scheduling Order made them due July 16, 2024. Plaintiffs had the opportunity to amend those reports as of July 16, 2024, but chose not to.

subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports") (quoting *Withrow*, 967 F. Supp. 2d at 1002); *E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Specialty Ins. Co.*, No. 2:14-cv-2567, 2015 WL 12831677, *1 (D.S.C. July 9, 2015) (similar).[11]

## II. ESSELSTYN'S DISTRICT E CANNOT BE JUSTIFIED AS "SUPPLEMENTATION" OF HIS OPENING REPORT.

Demonstration District E and accompanying opinion cannot be salvaged as proper supplementation. The obligation to supplement arises "if the party" who served a prior disclosure "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). A supplemental report would consist of "'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). Supplemental disclosures are "not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); *see also Freeman*, 961 F. Supp. 2d at 797 ("The rule does not create a 'right to produce information in a belated fashion.'") (citation omitted).

Courts police the line between "'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship." *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008). That is because Fed. R. Civ. P. 26(e) "does not give license to sandbag one's

---

[11] Even if the 2022 ACS data qualified as "new evidence and data," which it does not, Plaintiffs' rebuttal report could only cite it "so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow*, 967 F. Supp. 2d at 1002 (citation omitted); *see also McKiver*, 2018 WL 1832964, at *1. Esselstyn does not offer District E to "contradict or rebut" Trende's conclusion that Esselstyn cannot prove Districts B and D have at least 50% BCVAP.

opponent with claims and issues which should have been included in the expert witness' report." *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 696, 701 (D.N.M. 2003). *See also, e.g., Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *McKiver*, 2018 WL 1832964, at *2. Courts routinely strike expert reports that masquerade as rebuttal or supplemental reports when they in truth are "an attempt to deepen, strengthen or expand existing opinions, which is not allowed under Rule 26(e)." *Hous. Auth. of the City of L.A. v. PCC Tech. Indus., Inc.*, 2015 WL 13864845, ** 2 (C.D. Cal. Mar. 4, 2015).

Courts have "repeatedly rejected attempts … [at] 'supplementing' an expert report with a 'new and improved' expert report." *Gallagher*, 568 F. Supp. 2d at 631. *See also, e.g., MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005) (finding a putative "supplement" to an initial expert report not a "true supplement" where it "contained new opinions and doubled the amount of damages"); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159-161 (S.D. Ind. 2009) (striking "reply" expert report by plaintiffs' expert in response to defendant's criticism of expert's opening report, where reply "advance[d] a new price premium analysis . . . as well as other new analyses . . . none of which was developed in the original report"). In particular, the supplementation rule "does not cover failures of omission because the expert did an inadequate or incomplete preparation" the first time around. *Akeva*, 212 F.R.D. at 310. *See also, e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-CV-01509, 2020 WL 1154809, **5-6 (S.D. Ohio Mar. 10, 2020) (expert's "effort to cure his woefully deficient testimony, respond to criticisms of his methodology, and to provide new and additional opinions to buttress his claims" was improper supplementation); *Solaia Tech., LLC v. ArvinMeritor, Inc.*, 361 F. Supp. 2d 797, 806 (N.D. Ill. 2005) (holding an expert issuing a "much

expanded opinion . . . prompted solely by [the defendant's] summary judgment motion" is "not the proper role for supplementation of a report by an expert").

Esselstyn's rebuttal report is an attempt to "bolster his deficient opinion by employing a new methodology" after the opening report deadline. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011). Plaintiffs submitted Demonstration District E to satisfy their burden of proof on the first *Gingles* precondition at trial, along with detailed analysis of District E from Esselstyn, Mattingly, and Collingwood. This is not "rebuttal" material for reasons explained, and it is not "supplemental" for the same reasons. The current 2022 ACS five-year estimates were in the public record in January 2024, and any opinion based on that information should have appeared in opening reports. Esselstyn was capable of performing any necessary disaggregation of that data, and the Redistricting Data Hub that Esselstyn used published "disaggregated" 2022 ACS data by June 24, 2024, at least three weeks before the July 16, 2024, opening report deadline. Esselstyn could have provided District E in his initial report, if he (or Plaintiffs) believed the exercise was relevant.

Each step of this process is a "transparent attempt" to bolster expert-opinion "after the weaknesses in the [Plaintiffs' evidentiary showing] have been revealed." *Pluck*, 640 F. 3d at 681. *See also Baker v. Chevron U.S.A., Inc.*, 533 Fed. App'x 509, 520 (6th Cir. 2013) (affirming exclusion because "the untimely Third Report was an obvious attempt to bolster a deficient opinion"). Esselstyn's choice to rely on outdated ACS data was a considered decision that cannot be revisited under the limited avenue for supplemental reports. "[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 897 (1990). "It is implausible to suggest . . . that parties will initially present less than their best expert evidence in the expectation

of a second chance should their first try fail." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). But that is what Plaintiffs are doing here, and the Court should reject that as improper and prejudicial.

### III.     PLAINTIFFS CANNOT SHOW THAT THE UNTIMELY DISCLOSURE IS SUBSTANTIALLY JUSTIFIED OR HARMLESS.

The untimely disclosed analysis and opinion should be excluded. The orderly presentation of expert evidence is essential to allow for proceedings free from unfair surprise. Under Fed. R. Civ. P. 37(c)(1), a party's failure without "substantial justification" to timely disclose information required by Fed. R. Civ. P. 26(a) or 26(e) requires exclusion, unless the failure is "substantially justified" or "harmless." *S. States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).

Factors for determining whether a failure is substantially justified or harmless include: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* It is Plaintiffs' burden to show that their failure was harmless or substantially justified. *Id.* (citing *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001)). Plaintiffs cannot meet that burden.

The first three factors cut in favor of exclusion because the new demonstration district effectuates a surprise that cannot be cured without disrupting trial. "When a party fails to . . . provide the [expert] disclosures required by Rule 26(a)(2) in accordance with the court's scheduling order, '[d]isruption to the schedule of the court and other parties in that manner is not harmless.'" *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016) (citation omitted) (striking untimely report that was "essential to proving the

[plaintiffs'] case-in-chief" where plaintiffs served the report on the defendant "at the last possible moment" in the discovery schedule). Here, Plaintiffs' new District E came *after* Legislative Defendants served their responsive expert reports on August 16, 2024, and to their considerable surprise, given that Plaintiffs submitted *four* Demonstration Districts in their opening submission. *See Vance, by and through Hammons v. United States*, No. 98-5488, 1999 WL 455435, \*5 (6th Cir. 1999) (unreported) (holding untimely disclosure was not "harmless" where "the defendant did not know th[e] other opinions the expert would state until the supplement was filed").

The Court's scheduling order does not permit any response to Demonstration District E or opinions accompanying it, and this clearly prejudices Legislative Defendants. This prejudice cannot be cured by re-opening discovery and permitting new rebuttal reports before trial—even assuming Plaintiffs would support that approach. That procedure would create a tit-for-tat expert arms race leading to more and more expert evidence, significantly greater cost, and disorder—the exact opposite of an orderly system of discovery that promotes efficiency and allows trials to be decided on the merits, not by ambush. *See, e.g.*, *Akeva LLC,* 212 F.R.D. at 310 ("To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc [on] docket control and amount to unlimited expert opinion preparation."); *Beller*, 221 F.R.D. at 701 (holding that allowing improper supplementation of expert opinion "would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given").

Moreover, at Plaintiffs' insistence, this Court set a Scheduling Order setting trial in just over three months (February 3, 2025). At the same time, parallel cases also challenging North Carolina redistricting plans—*Williams v. Hall*, No. 23-cv-1057 (M.D.N.C.) and *North Carolina*

*State Conf. of NAACP v. Berger*, No. 23-cv-1104 (M.D.N.C.)—are in discovery with a trial date

in June 2025. It would be prejudicial to require Legislative Defendants and their counsel and

experts to re-do analysis to accommodate belated material that was due in July.

As one judge explained in affirming the exclusion of a party's expert report as untimely, it

is not fair to force the non-offending party to bear that burden:

> Every violation of the Rules has consequences; the question is who
> will bear them. Too often the consequences are borne only by the
> innocent party, who must live with the violation (here, a useless
> report) or else pay to brief and argue a motion to compel the
> offending party to do what the Rules required it to do all along.
> Better instead to make the offending party pay a price, and thereby
> also to remind others that they, too, should comply the first time.

*R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 277-78 (6th Cir. 2010) (Kethledge, J.

concurring). Legislative Defendants respectfully submit that neither they, nor the voters of North

Carolina (who must live with the results of this litigation), should have to pay the price for

Plaintiffs' noncompliance with Rule 26 and the Court's Scheduling Order.

The final factor, the strength of justification for untimely disclosure, also favors exclusion.

There is no legitimate reason why Demonstration District E could not have been disclosed in

Esselstyn's opening report. Nothing prevented him from preparing that configuration earlier.

Moreover, as explained, the 2022 ACS five-year estimates were available *six months* before the

July 16 report deadline, and Esselstyn could have leveraged that data in formulating his

Demonstration Districts and opinions. That Esselstyn's methods were deficient does not entitle

Plaintiffs to introduce a new district. Buyer's remorse is not a substantial justification for delayed

disclosure. This untimely pivot to a new District had the effect of sandbagging Legislative

Defendants with this expansive new analysis—supported by no less than *three* rebuttal expert

reports—late in the game. That is not good faith or substantial justification under any reasonable

definition.

## CONCLUSION

For the foregoing reasons, the Court should enter an order striking "District E" and related expert opinions and issue an order *in limine* barring Plaintiffs from offering opinions or evidence concerning "District E" at trial or otherwise.

Respectfully submitted, this the 18th day of October, 2024.

**BAKER & HOSTETLER LLP**

Richard B. Raile*
DC Bar No. 1015689
Katherine L. McKnight*
Trevor Stanley*
1050 Connecticut Ave. NW, Suite 1100
Washington DC 20036
Ph: (202) 861-1500
rraile@bakerlaw.com
kmcknight@bakerlaw.com
tstanley@bakerlaw.com

Patrick T. Lewis*
Ohio State Bar no. 0078314
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Ph: (216) 621-0200
plewis@bakerlaw.com

Erika Dackin Prouty*
Ohio State Bar No. 0095821
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 462-4710
eprouty@bakerlaw.com

Rachel Hooper*
Texas State Bar no. 24039102
Tyler G. Doyle*
Texas State Bar no. 24072075
811 Main Street, Suite 1100
Houston, Texas 77002
Ph: (713) 751-1600
rhooper@bakerlaw.com
tgdoyle@bakerlaw.com
*Appeared via Special Notice*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ *Phillip J. Strach*
    Phillip J. Strach
    North Carolina State Bar no. 29456
    Alyssa M. Riggins
    North Carolina State Bar no. 52366
    Cassie A. Holt
    North Carolina State Bar no. 56505
    Jordan Koonts
    North Carolina State Bar no. 59363
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Ph: (919) 329-3800
    phil.strach@nelsonmullins.com
    alyssa.riggins@nelsonmullins.com
    cassie.holt@nelsonmullins.com
    Jordan.koonts@nelsonmullins.com

*Attorneys for Legislative Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the forgoing document was filed on the Court's electronic case filing system, and that notice of the filing will be served on all counsel of record by the Court's system. Copies of this filing are available via the Court's system.

This the 18th day of October, 2024.

**NELSON MULLINS RILEY &**
**SCARBOROUGH LLP**

By: /s/ *Phillip J. Strach*
     Phillip J. Strach
     North Carolina State Bar no. 29456
