IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

RODNEY D. PIERCE and
MOSES MATTHEWS,

                Plaintiffs,

v.

THE NORTH CAROLINA STATE BOARD
OF ELECTIONS, *et al.*,

                Defendants.

Case No. 4:23-cv-193-D

**REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE "DEMONSTRATION DISTRICT E" AND RELATED EXPERT OPINION**

To accept Plaintiffs' defense of a new demonstration district—and more than two dozen pages of expert opinion analyzing it—"would signal to all litigants that the deadlines in this court's scheduling orders are mere suggestions." *Cahoon v. Edward Orton, Jr. Ceramic Found.*, No. 2:17-CV-63, 2020 WL 918753, at *3 (E.D.N.C. Feb. 24, 2020). "They are not." *Id.* The untimely expert disclosure is neither rebuttal material nor proper supplementation nor harmless.

**ARGUMENT**

**I.    THE DISCLOSURE IS UNTIMELY.**

    **A.    The Disclosure Is Not Rebuttal Material.**

Demonstration District E and accompanying opinions are not proper rebuttal material. "It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (citations omitted). That is the case here.

Plaintiffs admit the district marks an effort "to show that it is possible to draw a demonstration district within Districts 1 and 2 that is majority Black." D.E. 88 at 14, Plaintiffs'

Opposition to Legislative Defendants' Motion in Limine (*hereinafter* "Opp."); *see also id.* at 17 (admitting the district "is offered in support of Mr. Esselstyn's original opinion that it is possible to draw a reasonably configured majority-Black district within enacted Districts 1 and 2"). Demonstration District E therefore "directly supports" Plaintiffs' "case-in-chief theory," *McKiver v. Murphy-Brown LLC*, No. 7:14-cv-180, 2018 WL 1832964, at *2 (E.D.N.C. Apr. 17, 2018), that the "minority group [is] sufficiently large and [geographically] compact to constitute a majority in a reasonably configured district." *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (citation omitted). The time for that showing was the opening report. Because Demonstration District E does not "explain, repel, counteract, or disprove facts given in evidence by the opposing party," it is not rebuttal material. *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (citation omitted). Plaintiffs' two efforts to show otherwise fail.

First, Plaintiffs propose that Demonstration District E counters Dr. Trende's opinion that racial motivation drove the configuration of Demonstration Districts B and D. Opp. 8. But Mr. Esselstyn did not offer District E for that purpose. Instead, Demonstration District E is meant to prove that a district "above 50%" "Black CVAP%" is possible. D.E. 87-5 at 13. The rebuttal report presents Demonstration District E in the same fashion as the opening report presents Demonstration Districts A through D. *Compare* D.E. 87-5 at 9-14 *with* D.E. 87-1 at 14-32. Mr. Esselstyn offered Demonstration District E to make another showing of the same kind—i.e., to prove a case element.

Nor does the rebuttal report explain how a new plan could illuminate Mr. Esselstyn's intent in configuring past plans. *See Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 179 (2017) ("The proper inquiry" under the predominance test "concerns the actual considerations that provided the essential basis for the lines drawn, not *post hoc* justifications that the [map-maker]

could have used but did not."). Plaintiffs claim Demonstration District E proves Mr. Esselstyn did not draw prior districts with racial motive, but even if a majority-minority goal could be met without "split[ting] Elizabeth City along racial lines," Opp. 8, that does not disprove that racial motive caused the split when it occurred. *See Bethune-Hill v. Va. State Bd. of Elections*, 326 F. Supp. 3d 128, 145 (E.D. Va. 2018) (three-judge court) (holding that "race may predominate in the drawing of a particular legislative district even if … particular district lines were not necessary to achieve the" racial target). Mr. Esselstyn's rebuttal report neither denies this intent nor suggests Demonstration District E negates it. Setting aside the rebuttal standard, Plaintiffs' new proposed use of Demonstration District E violates the rule that an expert's report "limits the expert's testimony."[1] *Adell Plastics, Inc. v. Mt. Hawley Ins. Co.*, No. 17-cv-00252, 2019 WL 2359441, at *1 (D. Md. June 4, 2019) (citation omitted).

Second, Plaintiffs propose that Demonstration District E responds to Dr. Trende's criticism that, "using 2022 figures, Demonstration District B's Black CVAP% is below 50%," and "that the confidence interval drops below 50% using 2022 figures" for Demonstration District D. Opp. 8-9. But Demonstration District E does not address those criticisms. Whatever Demonstration District E's Black CVAP might be, it cannot change the Black CVAP of Demonstration Districts B or D.

Dr. Trende did not offer an abstract opinion on whether "it is possible to draw a reasonably configured majority-Black district using *2022* figures." Opp. 9. He concluded there is no "reasonable degree of certainty. . . that districts B-1 and D-1 have majority Black CVAPs." D.E. 87-4 at 25. Presenting a new plan Dr. Trende did not review does not respond to his criticisms of plans he did review. Dr. Trende had no occasion to present opinions about plans not in Mr.

---

[1] Plaintiffs fault Legislative Defendants for failing to "address this point in their motion," Opp. 15, but the motion could not address a proposed use not apparent in the rebuttal report.

Esselstyn's opening report because he had never seen them, and the first precondition is Plaintiffs' to prove, not Legislative Defendants' to disprove. States Rock & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). While Plaintiffs minimize Demonstration District E as involving "changes to the boundaries of *four* precincts," Opp. 1, Mr. Esselstyn's report does not make this point (much less find it significant), and the new district required the coordinated work of *three experts* and more than two dozen pages addressing the topic. D.E.87-5 at 9-14, 50-63; D.E. 87-7 at 3-4; D.E. 87-8 at 27-32. If Demonstration District E were insignificant, Plaintiffs would not have presented it.

Plaintiffs propose a game of "whack-a-mole" where, each time a defense expert criticizes a demonstration plan, plaintiffs' expert will offer a new one—leading to "unlimited expert opinion preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). The rebuttal limits forbid that approach. Plaintiffs invoke case law permitting "new evidence and data" in rebuttal reports. Opp. 7 (citation omitted). But such evidence must be "offered to directly contradict or rebut the opposing party's expert." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) (quotation marks and citations omitted). Plaintiffs know what it means to challenge Dr. Trende's opinions: they allege "significant errors in Dr. Trende's calculations." Opp. 5. New evidence supporting such contentions might be proper rebuttal.[2] But submitting a new plan that Dr. Trende had never seen supposedly rebutting opinions Dr. Trende did not offer is no way to directly contradict Dr. Trende.

Without support in the rules governing rebuttals, Plaintiffs request special rules for "additional demonstrative plans offered in a redistricting expert's rebuttal report to address

---

[2] Legislative Defendants dispute that Plaintiffs have successfully undermined Dr. Trende's opinions. The parties agree this is a matter to be addressed "at trial." Opp. 4 n.3.

criticisms of the initial demonstrative plans." Opp. 10. But there is no redistricting exception to the Federal Rules. Plaintiffs assert that "experts routinely offer additional demonstrative plans in rebuttal to respond to criticisms of their initial demonstrative plans," Opp. 9, yet their citations do not bear the weight of that bold assertion. In one of just two cases Plaintiffs cite, the rebuttal report was not challenged as improper, *see Caster v. Merrill*, No. 2:21-cv-1536, 2022 WL 264819, at *35 (N.D. Ala. Jan. 24, 2022), and certainly not in the Supreme Court, *see generally Allen*, 599 U.S. 1.

The other is a district-court decision issued en route to a judgment that was unanimously stayed in the U.S. Supreme Court and then promptly vacated. *Chabot v. Ohio A. Philip Randolph Inst.*, 139 S. Ct. 2635 (2019); *Householder v. Ohio A. Philip Randolph Inst.*, 140 S. Ct. 101 (2019). That provides no context for proof of what is "routinely" done. Nor does the motion *in limine* decision illuminate this case. It was not Section 2 litigation, but partisan-gerrymandering litigation where the district court ultimately required the defense to justify supposed political burdens (including with an incumbency-protection interest). *See Ohio A. Philip Randolph Inst. v. Householder*, 373 F. Supp. 3d 978, 1160-61 (S.D. Ohio 2019). The motion *in limine* opinion was analytically imprecise about where that burden might lie, *Ohio A. Philip Randolph Inst. v. Smith*, No. 1:18CV357, 2019 WL 428371, at *3 (S.D. Ohio Feb. 4, 2019), even though the placement of the burden is critical for assessing the scope of proper rebuttal, *see Emerick*, 750 F.2d at 21-22. Moreover, because the entire political-gerrymandering experiment has been refuted, *Rucho v. Common Cause*, 588 U.S. 684 (2019), the decision cannot be fairly read to inform a Section 2 case, where the location and nature of the burden is quite clear, *Allen*, 599 U.S. at 18.

4854-0090-7254 v.1

### B. The Disclosure Is Not a Supplement.

Plaintiffs engage in further revisionism by calling Demonstration District E "supplementation." Opp. 16-18. But Mr. Esselstyn's report does not even purport to be a supplement. *See* D.E. 87-5 at 2 ("Rebuttal Report of Blakeman B. Esselstyn").

Besides, the supplementation standard is unmet. Plaintiffs deny that the new material was presented for "correcting mistakes," so that basis of supplementation is unavailable. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (D. Md. 2013) (citation omitted); Opp. 13; *see also* Opp. 4-5 & n.3. Nor does Demonstration District E "fill[] the interstices of an incomplete report." *Freeman*, 961 F. Supp. 2d at 797. In Plaintiffs' telling, Mr. Esselstyn's opening report is complete: it includes four demonstratives that Plaintiffs continue to insist prove the first precondition. Opp. 17 ("Demonstration District E . . . is offered in support of Mr. Esselstyn's original opinion").

Rather than fill a gap, the new district "sandbag[s]" Legislative Defendants "with claims and issues which should have been included in the expert witness' [opening] report." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). Although Plaintiffs focus on "the 2022 Black CVAP figures," Opp. 16, Legislative Defendants did not move to exclude those figures. They object to a *new redistricting plan* and 24 pages of accompanying opinion that could have appeared in opening reports. Mr. Esselstyn did not need the 2022 Black CVAP figures to prepare Demonstration District E, and simply adding them in a rebuttal (without a new plan) would more than suffice to fill in any supposed gaps. Even if those figures would have (if consulted) apprised Mr. Esselstyn of vulnerabilities in original demonstratives, he already knew the CVAP figures he cited displayed the slimmest of Black CVAP majorities, *see* D.E. 87-1 at 14, 18, 20, 24, and that error margins are at issue, *see Pierce v. N.C. State Bd. of Elections*, 713 F. Supp. 3d 195, 226 (E.D.N.C. 2024). He had every incentive to present districts that meaningfully exceeded the

50% mark and cannot claim to have been unaware of the benefits of ensuring majority-BVAP status.

Regardless, gap-filling must be "based on information that was not available at the time of the initial disclosure," *Freeman*, 961 F. Supp. 2d at 797 (citation omitted), and Plaintiffs admit the 2022 figures were then available. Opp. 17-18. Plaintiffs propose it was "appropriate … to choose to rely on" a website to disaggregate data (even though Esselstyn could disaggregate it) and not to change Mr. Esselstyn's report between May 2024 (when it was gratuitously served) and July 16 (when it was due). Opp. 17-18. But arguments about convenience bypass the relevant legal point that the 2022 figures were *available* when opening reports were due.

## II. PLAINTIFFS DO NOT PROVE THE VIOLATION WAS HARMLESS OR JUSTIFIED.

The untimely materials are not "substantially justified or … harmless." Fed. R. Civ. P. 37(c). Plaintiffs sandbagged the defense with a new demonstrative plan intended to prove a case element standing alone, *after* Legislative Defendants had served their expert reports critiquing Plaintiffs' four timely plans. These are not "vague assertions," Opp. 24, and Plaintiffs' insistence that Legislative Defendants must "establish prejudice," *id.*, betrays the error underpinning all their contentions. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) ("The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless."). Rather than prove substantial justification or absence of harm, Plaintiffs make sweeping assertions that "would signal to all litigants that the deadlines in this court's scheduling orders are mere suggestions." *Cahoon*, 2020 WL 918753, at *3.

To begin, Plaintiffs claim "there is no surprise" because "Demonstration District E was disclosed over 5 months before trial, and 1 month before expert discovery closed." Opp. 19. But it came after Legislative Defendants' expert-disclosure deadline passed and after they served reports

"in compliance with the court's scheduling order believing that" the demonstratives relevant to the first precondition were already disclosed. *Cahoon*, 2020 WL 918753, at *3. That is a paradigmatic surprise. Plaintiffs are wrong to insist "statistics that Mr. Esselstyn presented about Demonstration District E, like compactness, population, and splits, are easily verifiable by opening the shapefile in a mapping program." Opp. 19. Ascertaining and managing such programs requires the work of experts, which is why *three* sets of expert opinion "accompany Demonstration District E." *Id.* at 20. Plaintiffs clearly understand that opinions concerning Demonstration District E must be introduced through expert reports.

By contrast, in Plaintiffs' principal authority, a split Fourth Circuit found no abuse of discretion in trial court's admitting untimely opinion because an initial expert report noted that forthcoming information would change the damages calculation presented in that report, which put the defendant on notice of future changes; the calculation involved basic arithmetic; and, "decisively, the collective result of these changes was a *decrease* in the amount of damages calculated." *Bresler*, 855 F.3d at 193. Here, Mr. Esselstyn's opening report did not forecast or justify future changes, evaluating his plans requires expert skill, and ("decisively") his new plan *increased* the BVAP of his proposed majority-minority district. Besides, *Bresler* does not require every trial court to exercise its discretion in the same manner. *See Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (affirming exclusion of untimely disclosure because unmet deadlines caused surprise). Plaintiffs' theory ignores "the need for parties to abide by case management orders." *Id.* Plaintiffs' argument would exonerate every improper presentation of new material in a rebuttal report, which would never cause surprise under their theory. *But see id.*

Next, there is no "ability of [the] party" prejudiced "to cure the surprise." *Id.* Given the sophisticated nature of expert work in this case, the opportunity to depose Plaintiffs' expert does

not cure the inability of Legislative Defendants' experts to formulate and present opinion about Demonstration District E. *Contra* Opp. 22. Although Plaintiffs point to "a built-in date for sur-rebuttal reports from Defendants," *id.* at 6, that opportunity only applied in the event of "new experts disclosed by plaintiffs," D.E. 81 at 1 (¶ 6). Mr. Esselstyn was not new. Accordingly, on August 19, Plaintiffs' counsel declared to Legislative Defendants' counsel that, because Plaintiffs "do not intend to disclose any new experts at this stage," "the scheduling order's September 13 deadline for possible additional expert reports from defendants is now moot," Ex. 1, Aug. 19, 2024 Correspondence from R. Jones at 1. An inapplicable sur-rebuttal opportunity is no cure.

Plaintiffs next claim Legislative Defendants should "have sought leave to file a responsive report." Opp. 25. That proposition would leave the Rule 37(c) analysis with "no limiting principle." *Benjamin*, 986 F.3d at 342. Litigants can always request new case deadlines. To rule Plaintiffs' deadline violations harmless because new deadlines are possible would engulf this Court, which has numerous "pending cases," with litigation over violated deadlines and extension motions, and deem all orders "suggestions." *Cahoon*, 2020 WL 918753, at *3. These are proper reasons to reject untimely disclosures. *Benjamin*, 986 F.3d at 343.

Plaintiffs then seek to flip the burden by demanding proof of what Legislative Defendants' experts would say in response to the untimely material. Opp. 25. But the burden is theirs. And Legislative Defendants can hardly be expected to pay for expert analysis concerning untimely opinions that would not be admissible in the absence of a report. Plaintiffs' arguments are a recipe to run up litigation costs needlessly, as any new expert opinion could always lead to more opinion. More expert reports now would only lead to more discovery and "disrupt the trial," *Benjamin*, 986 F.3d at 343.

4854-0090-7254 v.1

Finally, the delay is not "substantially justified." *Contra* Opp. 25. Evidence under the first precondition is of critical importance, and "the more important the evidence, the more important it is for the proponent to disclose the evidence in a timely manner because it is more likely to prejudice the opposing party." *Benjamin*, 986 F.3d at 343 (quotation and alteration marks omitted). An excuse for such a failure should be compelling. Plaintiffs' are not. Their contention that Demonstration District E addresses "racial reasons" for prior plans, Opp. 25, is a *post hoc* lawyers' argument not in Mr. Esselstyn's rebuttal. And Plaintiffs' argument about "the 2022 disaggregated ACS data," Opp. 26, ignores that Demonstration District E does not depend on that data, and it was available in January 2024. Plaintiffs' error is unforced and not justified.

## CONCLUSION

The Court should grant the motion and exclude Demonstration District E and related expert opinions.

This the 4th day of November, 2024.

| | |
|---|---|
| **BAKER & HOSTETLER LLP** | **NELSON MULLINS RILEY & SCARBOROUGH LLP** |
| Richard B. Raile* | |
| DC Bar No. 1015689 | By: /s/ Phillip J. Strach |
| Katherine L. McKnight* | Phillip J. Strach |
| Trevor Stanley* | North Carolina State Bar no. 29456 |
| 1050 Connecticut Ave. NW, Suite 1100 | Alyssa M. Riggins |
| Washington DC 20036 | North Carolina State Bar no. 52366 |
| Ph: (202) 861-1500 | Cassie A. Holt |
| rraile@bakerlaw.com | North Carolina State Bar no. 56505 |
| kmcknight@bakerlaw.com | Jordan Koonts |
| tstanley@bakerlaw.com | North Carolina State Bar no. 59363 |
| | 301 Hillsborough Street, Suite 1400 |
| Patrick T. Lewis* | Raleigh, North Carolina 27603 |
| Ohio State Bar no. 0078314 | Ph: (919) 329-3800 |
| 127 Public Square, Suite 2000 | phil.strach@nelsonmullins.com |
| Cleveland, Ohio 44114 | alyssa.riggins@nelsonmullins.com |
| Ph: (216) 621-0200 | cassie.holt@nelsonmullins.com |
| plewis@bakerlaw.com | Jordan.koonts@nelsonmullins.com |

| | |
|---|---|
| Erika Dackin Prouty* <br> Ohio State Bar No. 0095821 <br> 200 Civic Center Drive, Suite 1200 <br> Columbus, OH 43215 <br> (614) 462-4710 <br> eprouty@bakerlaw.com <br><br> Rachel Hooper* <br> Texas State Bar no. 24039102 <br> Tyler G. Doyle* <br> Texas State Bar no. 24072075 <br> 811 Main Street, Suite 1100 <br> Houston, Texas 77002 <br> Ph: (713) 751-1600 <br> rhooper@bakerlaw.com <br> tgdoyle@bakerlaw.com <br> *Appeared via Special Notice* | *Attorneys for Legislative Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing document was filed on the Court's electronic case filing system, and that notice of the filing will be served on all counsel of record by the Court's system. Copies of this filing are available via the Court's system.

This the 4th day of November, 2024.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456