# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION
### No. 4:23-CV-193-D

RODNEY D. PIERCE and
MOSES MATTHEWS,

         Plaintiffs,

    v.                                                          **<u>PRETRIAL ORDER</u>**

THE NORTH CAROLINA STATE BOARD
OF ELECTIONS, *et al*.,

         Defendants.

Appearances:

> <u>For Plaintiffs:</u>
> **Arnold & Porter Kaye Scholer LLP**
> R. Stanton Jones
> Elisabeth S. Theodore
> John Freedman
> Samuel I. Ferenc
> Orion de Nevers
>
> **Poyner Spruill LLP**
> Caroline P. Mackie
> Edwin M. Speas, Jr.
>
> <u>For Legislative Defendants:</u>
> **Nelson Mullins Riley & Scarborough LLP**
> Phillip J. Strach
> Alyssa M. Riggins
> Cassie A. Holt
> Jordan A. Koonts
>
> **Baker & Hostetler LLP**
> Katherine McKnight
> Patrick Lewis
> Erika Prouty
>
> <u>For State Board Defendants:</u>
> **North Carolina Department of Justice**

Terence Steed
Mary Carla Babb

**I.**    **<u>STIPULATIONS.</u>**

A. All parties are properly before the court.

B. The court has jurisdiction of the parties.

C. All parties have been correctly designated.

D. There is no question as to misjoinder or nonjoinder of parties.

E. <u>Evidentiary:</u>

     1.    All parties stipulate and agree that any party may cite, discuss, and otherwise rely on as admitted evidence, publicly available maps, StatPack Reports, and statistical reports related to compactness, split precincts or VTDs, municipalities, or counties available on the General Assembly's redistricting website on the page titled "Legislative and Congressional Redistricting" found at https://www.ncleg.gov/redistricting/, so long as those materials were on the website as of the date of this filing.

     2.    All parties stipulate and agree that any party may cite, discuss, and otherwise rely on as admitted evidence, all proposed maps and map amendments (and accompanying StatPacks) that were offered in Committee or on the House or Senate floor during the 2021, 2022, or 2023 state Senate redistricting process that are available on the General Assembly's website. Those websites are: https://www.ncleg.gov/BillLookUp/2023/S758, https://www.ncleg.gov/BillLookUp/2023/H898, https://www.ncleg.gov/Committees/CommitteeInfo/HouseStanding/182/Documents/16061, and https://www.ncleg.gov/Committees#SenateStanding.

For the avoidance of doubt, this stipulation does not cover any documents other than proposed maps, map amendments, and accompanying StatPacks.

3. Election results from the North Carolina Board of Elections Website (https://er.ncsbe.gov/) are treated as admitted, and all parties may rely on and introduce those election results at trial and may rely on those election results in their post-trial proposed findings of fact and conclusions of law, whether or not a particular election result is included on the exhibit list.

F. Facts:

1. Plaintiff Rodney Pierce is a registered voter and a citizen of Halifax County, North Carolina. He is Black.

2. Plaintiff Rodney Pierce resides in Senate District 2 under the 2023 Senate Plan.

3. Plaintiff Moses Matthews is a registered voter and a citizen of Martin County, North Carolina. He is Black.

4. Plaintiff Moses Matthews resides in Senate District 2 under the 2023 Senate Plan.

5. Legislative Defendants Timothy K. Moore[1] and Philip E. Berger are sued in their official capacities only, as Speaker of the North Carolina House of Representatives and President *Pro Tempore* of the North Carolina Senate respectively.

---

[1] Speaker Moore will not return to the General Assembly for the 2025-2026 legislative session, as he was recently elected to Congress. Legislative Defendants will notify the Court and all parties of the new Speaker upon his or her election.

4864-9622-3998 v.2

6. The North Carolina State Board of Elections ("State Board") and its members are sued in their official capacities only.

7. Following each decennial census, the General Assembly must redraw the districts for the North Carolina House of Representatives, the North Carolina Senate, and North Carolina's Congressional districts.

8. In North Carolina, legislative redistricting maps are enacted exclusively by the General Assembly. The Governor of North Carolina has no power to veto redistricting bills.

9. On February 12, 2021, the U.S. Census Bureau announced that its release of Public Law 94-171 redistricting data would be delayed by the COVID-19 pandemic, and would not be released until the fall of 2021, and specifically that it would deliver the P.L. 94-171 redistricting data to all states by September 30, 2021.[2]

10. On August 12, 2021, the U.S. Census Bureau released the 2020 Census Redistricting Data (P.L. 94-171) Summary File for all states, including North Carolina, in "legacy" format.[3]

11. On Thursday, August 5, 2021, at 2:00 p.m., the Senate Committee on Redistricting and Elections convened a Joint Meeting of the Senate Redistricting and Elections Committee and the House Redistricting Committee to begin discussion of the redistricting process.

---

[2] Press Release, U.S. Census Bureau, Census Bureau Statement on Redistricting Data Timeline (Feb. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/statement-redistricting-data-timeline.html.
[3] See U.S. Census Bureau, *U.S. Census Bureau Delivers Data for States to Begin Redistricting Efforts* (Aug. 12, 2021), https://www.census.gov/newsroom/press-releases/2021/population-changes-nations-diversity.html.

4864-9622-3998 v.2

12. On Monday, August 9, 2021, the redistricting chairs of the joint committees released the "2021 Joint Redistricting Committee Proposed Criteria." After receiving public comment on the Proposed Criteria, on August 12, 2021, the House Committee on Redistricting and the Senate Committee on Redistricting and Elections (together the "Joint Redistricting Committees") adopted criteria (the "2021 Criteria") to guide the enactment of new redistricting plans for North Carolina House and Senate Districts as well as Congressional Districts. *See* https://webservices.ncleg.gov/ViewDocSiteFile/38467.

13. On Wednesday, September 1, 2021, the Joint Redistricting Committees announced a Joint Public Hearing Schedule, that consisted of 13 public hearings to be held from September 8, 2021 through September 30, 2021.

14. On Tuesday, October 5, 2021, the Senate Committee on Redistricting and Elections and the House Committee on Redistricting each convened separately. In both meetings, the Redistricting Chairs announced utilization of county groupings described in the academic paper *N.C. General Assembly County Clusterings from the 2020 Census* (the "Duke Academic Paper"), published on the Duke University website "Quantifying Gerrymandering."[4]

15. A placeholder version of the state House Map was filed on Thursday, October 28, 2021, as House Bill 976 ("H.B. 976") where it passed its first

---

[4] Christopher Cooper et al., *NC General Assembly County Clusterings from the 2020 Census*, QUANTIFYING GERRYMANDERING (Aug. 17, 2021), https://sites.duke.edu/quantifyinggerrymandering/files/2021/08/countyClusters2020.pdf.

reading. A committee substitute ("HBK-14") received a favorable review and, after one amendment, passed its second and third readings in the House and its first reading in the Senate on November 2, 2021. It received a favorable report from the Senate Redistricting Committee on November 3, 2021, without alteration and passed its second and third readings on November 4, 2021. H.B. 976 was ratified into law on November 4, 2021, as S.L. 2021-175.

16.     A proposed version of the state Senate map ("SST-13") was filed on Friday, October 29, 2021, as Senate Bill 739 ("S.B. 739"). It passed its first reading on November 1, 2021, and was referred to the Senate Redistricting Committee that day. On November 2, 2021, the Senate Redistricting Committee adopted a substitute along party lines ("SBK-7"). On November 2, 2021, Senator Ben Clark offered two amendments to the bill, Senator Natasha Marcus offered two amendments to the bill, and Senator Dan Blue offered four amendments to the bill. The Committee adopted one of Senator Clark's amendments and rejected the other, adopted one of Senator Marcus's amendments and displaced the other, and rejected all of Senator Blue's amendments. S.B. 739 passed its second and third readings in the Senate on November 3, 2021, along party lines, and passed all three readings and the House Redistricting Committee without any further alteration on November 3–4, 2021. S.B. 739 was ratified into law on November 4, 2021, as S.L. 2021-173.

6

17.     Challenges to the 2021 North Carolina House, Senate, and Congressional Redistricting Plans (the "2021 Plans") were soon filed in state court by three groups of plaintiffs. Each plaintiff group challenged the 2021 Plans as unconstitutional partisan gerrymanders under the North Carolina Constitution. The challenges to the 2021 Plans were consolidated and assigned to a three-judge panel in Wake County Superior Court. On January 11, 2022, the three-judge panel entered a judgment concluding that the consolidated plaintiffs' partisan gerrymandering claims presented nonjusticiable political questions. All consolidated plaintiffs filed a notice of appeal to the North Carolina Supreme Court.

18.     On February 4, 2022, the North Carolina Supreme Court issued a Remedial Order that adopted the three-judge panel's findings of fact, but reversed the three-judge panel's conclusion that the claims were nonjusticiable, instead finding that the 2021 Plans violated the North Carolina Constitution. The Remedial Order also required that the General Assembly draw new plans by February 18, 2022. The Remedial Order also required that the three-judge panel either approve or adopt compliant congressional and state legislative districting plans by 12:00 pm on February 23, 2022.   On February 14, 2022, the North Carolina Supreme Court issued a full opinion explaining its order. *Harper v. Hall*, 380 N.C. 317, 868 S.E.2d 499 (2022) ("*Harper* I").

19.     The General Assembly enacted remedial legislative and congressional plans (the "Remedial Plans") on February 17, 2022. The Remedial Senate Plan

7

used different county groupings for the Senate Districts in Northeastern North Carolina than had been used in the 2021 Senate plan.[5] The Remedial Plans were submitted to the three-judge panel on February 18, 2022.

20.     In the interim, the three-judge panel hired three Special Masters, all former jurists, who in turn hired four advisors of their own. The three-judge panel submitted the Remedial Plans to the Special Masters.. The Special Masters recommended that the trial court uphold the General Assembly's remedial House and Senate plans, but that the court reject the remedial Congressional plan. The Special Masters submitted an alternative remedial congressional plan (the "Interim Congressional Plan") drafted in consultation with one of the advisors, Dr. Bernard Grofman, to the three-judge panel. The three-judge panel adopted the findings of the Special Masters in full. All parties appealed the three-judge panel's remedial order to the North Carolina Supreme Court, and some sought a stay of the order. The stay petitions were denied. Accordingly, the Remedial House and Senate Plans and the Interim Congressional Plan were used in the 2022 Elections.

21.     Appeals from the three-judge panel's remedial order to the North Carolina Supreme Court proceeded on an expedited schedule, with oral arguments held in October of 2022. Ultimately, the North Carolina Supreme Court issued a ruling on December 16, 2022, *Harper v. Hall,* 383 N.C. 89, 881 S.E.2d 89 (2022) ("*Harper* II") that affirmed the three-judge panel's rejection of the Remedial Congressional Plan and their approval of the

---

[5] The districts were also re-numbered such that Senate Districts 3 and 1 covered Northeastern North Carolina as opposed to Senate Districts 1 and 2.

4864-9622-3998 v.2

Remedial House Plan, but reversed the three-judge panel's approval of the Remedial Senate Plan.

22. On January 20, 2023, Legislative Defendants filed a petition for rehearing requesting that the North Carolina Supreme Court rehear *Harper* II, which the North Carolina Supreme Court granted on February 2, 2023.

23. After oral arguments, the North Carolina Supreme Court issued another opinion on April 28, 2023, 384 N.C. 292, 886 S.E.2d 393 (2023) ("*Harper III*"), that withdrew *Harper* II, overruled *Harper* I, and held that partisan gerrymandering claims are nonjusticiable political questions under the North Carolina Constitution. The Court also allowed the General Assembly to re-draw all state legislative redistricting plans ahead of the 2024 election.

24. The General Assembly held three public comment sessions from September 25–27, 2023, one each in Elizabeth City, Hickory, and Raleigh. The General Assembly also opened a public comment portal on the General Assembly's website that allowed individuals to submit comments and proposed maps for consideration.

25. An initial draft version of S.B. 758 was filed on October 18, 2023.

26. On October 19, 2023, the Senate referred the S.B. 758 initial draft to the Senate Committee on Redistricting and Elections. The Senate Committee on Redistricting and Elections then convened and enacted criteria for the new Senate redistricting plan (the "2023 Senate Criteria"). Also on October 19, 2023, the Senate Committee on Redistricting and Elections considered the initial draft of S.B. 758, which reverted to the two county groupings in

Northeastern North Carolina that were originally passed in S.B. 739 in 2021 for Senate Districts 1 and 2. All other county groupings remained the same as the 2022 Remedial Senate Plan. The Senate Committee on Redistricting and Elections continued debating S.B. 758 on October 23, 2023. Democratic Senators Woodard and Garrett each offered an amendment, relating to Durham and Guilford counties respectively, which both passed unanimously. Those amendments did not involve any counties or districts in Northeastern North Carolina. S.B. 758's Committee Substitute was adopted and sent to the Senate for debate.

27. On October 24, 2023, Democratic Senator Dan Blue offered two amendments to S.B. 758, both of which proposed changes to the districts in Northeastern North Carolina. Both of these amendments were tabled on party line votes and were not adopted. Democratic Senator Mohammed offered one amendment, which involved Mecklenburg County. This amendment was also tabled on party lines and was not adopted.

28. On October 22, 2023, the Southern Coalition for Social Justice submitted a letter to members of the General Assembly appending a memo containing an analysis of the proposed Senate map conducted by Dr. Kassra A.R. Oskooii. Senator Blue moved to place this letter and appended memo into the Senate Redistricting and Elections Committee record.

29. On October 25, 2023, the General Assembly passed and ratified S.L. 2023-146 (S.B. 758) into North Carolina law (the "2023 Senate Plan").

30. On November 20, 2023, Plaintiffs filed the instant action challenging Senate District 1 ("SD1") and Senate District 2 ("SD2").

31. SD1 is made up of the following whole counties: Northampton, Hertford, Bertie, Gates, Perquimans, Pasquotank, Camden, Currituck, Tyrell, and Dare. It has a Black Voting Age Population ("BVAP") of 29.49% based on the 2020 Decennial Census Data.

32. SD2 is made up of the following whole counties: Warren, Halifax, Martin, Chowan, Washington, Hyde, Pamlico, and Carteret. It has a BVAP of 30.01% based on the 2020 Decennial Census Data.

33. The following are the total Black population and BVAPs for Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties based on 2020 U.S. Census Data. Bertie County has a total Black population of 61.54% and a BVAP of 60.43%. Edgecombe County has a total Black population of 57.82% and a BVAP of 56.40%. Halifax County has a total Black population of 52.98% and a BVAP of 51.66%. Hertford County has a total Black population of 59.31% and a BVAP of 57.32%. Northampton County has a total Black population of 57.21% and a BVAP of 55.23%. Vance County has a total Black population of 51.71% and a BVAP of 49.98%. Warren County has a total Black population of 51.10% and a BVAP of 49.29%. Washington County has a total Black population of 50.36% and a BVAP of 47.92%.

4864-9622-3998 v.2

34. In the 2024 general election for State Senate District 1, Republican Bobby Hanig (white) defeated Democrat Susan Harman-Scott (white) by a margin of 57.21% to 42.79%. This district has a BVAP of 29.49% and a total white population of 62.91%.

35. In the 2024 general election for State Senate District 2, Republican Norman W. Sanderson (white) defeated Democrat Tare (T) Davis (Black) by a margin of 56.05% to 41.81%. Libertarian Maria Cormos (white) received 2.14% of the vote. This district has a BVAP of 30.01% and a total white population of 61.42%.

36. In the 2024 general election for State Senate District 3, Republican Bob Brinson (White) defeated Democrat Charles Dudley (Black) by a margin of 59.99% to 40.01%. This district has a BVAP of 26.66% and a total white population of 61.66%.

37. In the 2024 general election for State Senate District 4, Republican Buck Newton (white) defeated Democrat Raymond Smith, Jr. (Black) by a margin of 55.12% to 44.88%. This district has a BVAP of 35.02% and a total white population of 50.69%.

38. In the 2024 general election for State Senate District 5, Democrat Kandie D. Smith (Black) defeated Republican Alexander J. Paschall (white) by a margin of 55.08% to 44.92%. This district has a BVAP of 40.35% and a total white population of 48.56%.

39. In the 2024 general election for State Senate District 9, Republican Brent Jackson (White) defeated Democrat Jamie Bowles (White) by a margin of

65.03% to 34.97%. This district has a BVAP of 23.92% and a total white population of 59.94%.

40. In the 2024 general election for State Senate District 11, Republican Lisa Stone Barnes (white), defeated Democrat James Mercer (Black) by a margin of 51.29% to 48.71%. This district has a BVAP of 36.65% and a total white population of 52.17%.

State House Election Results – 2024 General Election

41. In the 2024 general election for State House District 1, Republican Edward C. Goodwin (white), defeated Democrat Susan A. Sawin (white) by a margin of 65.06% to 34.94%. This district has a BVAP of 18.46% and a total white population of 73.70%.

42. In the 2024 general election for State House District 4, Republican Jimmy Dixon (White) defeated Democrat Vernon Moore (Black) by a margin of 63.03% to 36.97%. This district has a BVAP of 27.49% and a total white population of 50.57%.

43. In the 2024 general election for State House District 5, Republican Bill Ward (white), defeated Democrat Howard Hunter III (Black) by a margin of 54.16% to 45.84%. This district has a BVAP of 38.59% and a total white population of 53.90%.

44. In the 2024 general election for State House District 7, Republican Matthew Winslow (white), defeated Democrat Jesse Goslen (white) by a margin of 55.32% to 42.17%. Libertarian Gavin Bell received 2.51% of the vote. This district has a BVAP of 26.80% and a total white population of 61.32%.

4864-9622-3998 v.2

45. In the 2024 general election for State House District 8, Democrat Gloristine Brown (Black) defeated Republican Angelene Mitchell (Black) by a margin of 64.03% to 35.97%. This district has a BVAP of 45.34% and a total white population of 41.78%.

46. In the 2024 general election for State House District 9, Republican Timothy Reeder (White) defeated Democrat Claire Kempner (White) by a margin of 55.95% to 44.05%. This district has a BVAP of 26.25% and a total white population of 62.16%.

47. In the 2024 general election for State House District 10, Republican John Bell (White) defeated Democrat Beatrice Jones (Black) by a margin of 60.79% to 39.21%. This district has a BVAP of 32.40% and a total white population of 56.07%.

48. In the 2024 general election for State House District 12, Republican Chris Humphrey (White) defeated Democrat Lillie Williams (Black) and Green Party candidate Adrien Meadows (Black) by a margin of 57.28% to 41.37% and 1.35%, respectively. This district has a BVAP of 38.48% and a total white population of 50.71%.

49. In the 2024 general election for State House District 13, Republican Celeste Cairns (White) defeated Democrat Katie Tomberlin (White) by a margin of 69.89% to 30.11%. This district has a BVAP of 8.91% and a total white population of 80.71%.

50. In the 2024 general election for State House District 16 Republican Carson Smith (White) defeated Democrat Frances Lakey (White) by a margin of

14

70.84% to 29.16%. This district has a BVAP of 11.72% and a total white population of 77.29%.

51. In the 2024 general election for State House District 22, Republican William Brisson (White) defeated Democrat Joshua Harrell (White) by a margin of 61.01% to 38.99%. This district has a BVAP of 28.47% and a total white population of 53.42%.

52. In the 2024 general election for State House District 23, Democrat Shelly Willingham (Black), defeated Republican Brent Roberson (white) by a margin of 56.46% to 43.54%. This district has a BVAP of 53.41% and a total white population of 40.05%.

53. In the 2024 general election for State House District 24, Democrat Dante Pittman (Black) defeated Republican Ken Fontenot (Black) by a margin of 51.10% to 48.90%. This district has a BVAP of 38.50% and a total white population of 48.33%.

54. In the 2024 general election for State House District 25, Republican Allen Chesser (White) defeated Democrat Lorenza M. Wilkins (Black) and Libertarian Nick Taylor (White) by a margin of 48.80% to 47.86% and 3.33%, respectively. This district has a BVAP of 39.97% and a total white population of 49.15%.

55. In the 2024 general election for State House District 27, Democrat Rodney D. Pierce (Black) ran unopposed and received 100% of the vote. This district has a BVAP of 51.88% and a total white population of 39.50%.

56. In the 2024 general election for State House District 32, Democrat Bryan Cohn (white), defeated Republican Frank Sossamon (white) by a margin of 48.95% to 48.42%. Libertarian Ryan Brown (white) received 2.63% of the vote. This district has a BVAP of 39.64% and a total white population of 49.10%.[6]

57. In the 2024 general election for State House District 79, Republican Keith Kidwell (White) defeated Democrat Mary Beedle (White) by a margin of 63.24% to 36.76%. This district has a BVAP of 17.08% and a total white population of 73.13%.

State House Election Results – 2024 Primary Election

58. In the 2024 Democratic primary election for State House District 9, Claire Kempner (white), defeated Lenton Brown (Black) by a margin of 70.95% to 29.05%. This district has a BVAP of 26.25% and a total white population of 62.16%.

59. In the 2024 Democratic primary election for State House District 13, Katie Tomberlin (white), defeated Melvin Cooper (Black) by a margin of 62.24% to 37.76%. This district has had a BVAP of 8.91% and a total white population of 80.71%.

60. In the 2024 Democratic primary election for State House District 23, Shelly Willingham (Black), defeated Abbie Lane (white) by a margin of 78.85% to 21.15%. This district has a BVAP of 53.41% and a total white population of 40.05%.

---

[6] As of this filing, the certificate of election has not been issued as election protests regarding this contest remain pending before the State Board. The figures reported here are the certified results following canvass. In the event the pending election protests are found to require reopening of canvass, which leads to a certified result that differs from what is reported herein, the parties will provide updated certified election results to the court.

4864-9622-3998 v.2

61. In the 2024 Democratic primary election for State House District 27, Rodney D. Pierce (Black), defeated Michael H. Wray (white) by a margin of 50.14% to 49.86%. This district has a BVAP of 51.88% and a total white population of 39.50%.

62. In the 2024 Republican primary election for State House District 25, Allen Chesser (white), defeated Yvonne McLeod (Black) by a margin of 66.61% to 33.39%. This district has a BVAP of 39.97% and a total white population of 49.15%.

State Senate Election Results – 2022 General Election

63. In the 2022 general election for State Senate District 1, Republican Norman W. Sanderson (white) ran unopposed and received 100% of the vote. This district had a BVAP of 17.47%.

64. In the 2022 general election for State Senate District 2, Republican Jim Perry (White) ran unopposed and received 100% of the vote. This district has a BVAP of 26.66%.

65. In the 2022 general election for State Senate District 3, Republican Bobby Hanig (white), defeated Democrat Valerie Jordan (Black) by a margin of 52.53% to 47.47%. This district had a BVAP of 42.33%.

66. In the 2022 general election for State Senate District 4, Republican Buck Newton (white), defeated Democrat Milton F. (Toby) Fitch (Black) by a margin of 57.51% to 42.49%. This district had a BVAP of 35.02%.

67. In the 2022 general election for State Senate District 5, Democrat Kandie D. Smith (Black), defeated Republican Karen Kozel (white) by a margin of 52.23% to 47.77%. This district had a BVAP of 40.35%.

68. In the 2022 general election for State Senate District 9, Republican Brent Jackson (White) ran unopposed and received 100% of the vote. This district has a BVAP of 23.92%.

69. In the 2022 general election for State Senate District 11, Republican Lisa Stone Barnes (white), defeated Democrat Mark Speed (white) by a margin of 54.85% to 45.15%. This district had a BVAP of 36.65.

State House Election Results – 2022 General Election

70. In the 2022 general election for State House District 1, Republican Edward C. Goodwin (white) ran unopposed and received 100% of the vote. This district had a BVAP of 18.16%.

71. In the 2022 general election for State House District 4, Republican Jimmy Dixon (White) defeated Democrat Wesley Boykin (Black)  by a margin of 66.58% to 33.42%. This district has a BVAP of 25.50%.

72. In the 2022 general election for State House District 5, Republican Bill Ward (white), defeated Democrat Howard Hunter III (Black) by a margin of 53.83% to 46.17%. This district had a BVAP of 38.59%.

73. In the 2022 general election for State House District 8, Democrat Gloristine Brown (Black) defeated Republican Charles Vincent (White) by a margin of 53.57% to 46.43%. This district has a BVAP of 38.13%.

74. In the 2022 general election for State House District 9, Republican Timothy Reeder (White) defeated Democrat Brian Farkas (White) by a margin of 50.59% to 49.41%. This district has a BVAP of 33.19%.

75. In the 2022 general election for State House District 10, Republican John Bell (White) ran unopposed and received 100% of the vote. This district has a BVAP of 34.37%.

76. In the 2022 general election for State House District 12, Republican Chris Humphrey (White) defeated Democrat Lillie Williams (Black) by a margin of 61.42% to 38.58%. This district has a BVAP of 38.48%.

77. In the 2022 general election for State House District 13, Republican Celeste Cairns (White) defeated Democrat Katie Tomberlin (White) by a margin of 71.32% to 28.68%. This district has a BVAP of 8.84%.

78. In the 2022 general election for State House District 16, Republican Carson Smith (White) ran unopposed and received 100% of the vote. This district has a BVAP of 11.72%.

79. In the 2022 general election for State House District 22, Republican William Brisson (White) ran unopposed and received 100% of the vote. This district has a BVAP of 28.47%.

80. In the 2022 general election for State House District 23, Democrat Shelly Willingham (Black), defeated Republican James Crowell Proctor (white) by a margin of 54.42% to 45.58%. This district had a BVAP of 53.41%.

4864-9622-3998 v.2

81. In the 2022 general election for State House District 24, Republican Ken Fontenot (Black), defeated Democrat Linda Cooper-Suggs (Black) by a margin of 54.22% to 45.78%. This district had a BVAP of 38.50%.

82. In the 2022 general election for State House District 25, Republican Allen Chesser (white), defeated Democrat James D. Gailliard (Black) by a margin of 52.85% to 44.66%. Libertarian Nick Taylor (white) received 2.48% of the vote. This district had a BVAP of 39.97%.

83. In the 2022 general election for State House District 27, Democrat Michael H. Wray (white), defeated Republican Wes Tripp (white) by a margin of 61.44% to 38.56%. This district had a BVAP of 51.88%.

84. In the 2022 general election for State House District 32, Republican Frank Sossamon (white), defeated Democrat Terry Garrison (Black) by a margin of 51.33% to 48.67%. This district had a BVAP of 43.36%.

85. In the 2022 general election for State House District 79, Republican Keith Kidwell (White) ran unopposed and received 100% of the vote. This district has a BVAP of 17.35%.

State Senate Election Results – 2020 General Election

86. In the 2020 general election for State Senate District 1, Republican Bob Steinburg (white), defeated Democrat Tess Judge (white) by a margin of 55.24% to 44.76%. This district had a BVAP of 28.43% based on 2010 census data.

87. In the 2020 general election for State Senate District 3, Democrat Ernestine (Byrd) Bazemore (Black), defeated Republican Thomas S. Hester, Jr. (white)

by a margin of 52.03% to 47.97%. This district had a BVAP of 44.35% based on 2010 census data.

88. In the 2020 general election for State Senate District 4, Democrat Milton F. (Toby) Fitch, Jr. (Black), defeated Republican Sammy Davis Webb (Black) by a margin of 57.16% to 42.84%. This district had a BVAP of 47.46% based on 2010 census data.

State House Election Results – 2020 General Election

89. In the 2020 general election for State House District 1, Republican Edward C. Goodwin (white), defeated Democrat Emily Bunch Nicholson (white) by a margin of 54.46% to 45.54%. This district had a BVAP of 39.70% based on 2010 census data.

90. In the 2020 general election for State House District 5, Democrat Howard J. Hunter III (Black), defeated Republican Donald Kirkland (white) by a margin of 56.71% to 43.29%. This district had a BVAP of 44.31% based on 2010 census data.

91. In the 2020 general election for State House District 23, Democrat Shelly Willingham (Black), defeated Republican Claiborne Holtzman (white) by a margin of 58.76% to 39.59%. Green Party candidate Abbie (Bud) Lane (white) received 1.65% of the vote. This district had a BVAP of 51.82% based on 2010 census data.

92. In the 2020 general election for State House District 27, Democrat Michael H. Wray (white), defeated Republican Warren Scott Nail (white) by a margin of 66.78% to 33.22%. This district had a BVAP of 53.71% based on 2010 census data.

4864-9622-3998 v.2

93. In the 2020 general election for State House District 32, Democrat Terry E. Garrison (Black), defeated Republican David Woodson (white) by a margin of 61.21% to 38.79%. This district had a BVAP of 49.10% based on 2010 census data.

<u>Congressional Election Results – Congressional District 1</u>

94. Congressional District 1 in 2002, 2004, 2006, 2008, and 2010 had a BVAP of 47.76% (Black alone, not any part Black).

95. In the 2002 general election for Congressional District 1, Democrat Frank W. Ballance, Jr. (Black), defeated Republican Greg Dority (white) by a margin of 63.74% to 34.83%. Libertarian Mike Ruff (white) received 1.43% of the vote.

96. In the 2004 general election for Congressional District 1, Democrat G. K. Butterfield (Black), defeated Republican Greg Dority (white) by a margin of 63.98% to 36.02%.

97. In the 2006 general election for Congressional District 1, Democrat G. K. Butterfield (Black) ran unopposed and received 100% of the vote.

98. In the 2008 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Dean Stephens (white) by a margin of 70.28% to 29.72%.

99. In the 2010 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Ashley Woolard (white) by a margin of 59.31% to 40.69%.

100.    Congressional District 1 in 2012 and 2014 had a BVAP of 52.66%.

101.    In the 2012 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Pete DiLauro (white) by a margin of

75.32% to 22.86%. Libertarian Darryl Holloman (white) received 1.81% of the vote.

102.    In the 2014 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Arthur Rich (white) by a margin of 73.38% to 26.62%.

103.    Congressional District 1 in 2016 and 2018 had a BVAP of 44.5%.

104.    In the 2016 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican H. Powell Dew, Jr. (white) by a margin of 68.62% to 28.96%. Libertarian J.J. Summerell (white) received 2.42% of the vote.

105.    In the 2018 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Roger W. Allison (white) by a margin of 69.85% to 30.15%.

106.    Congressional District 1 in 2020 had a BVAP of 42.31%.

107.    In the 2020 general election for Congressional District 1, Democrat G.K. Butterfield (Black), defeated Republican Sandy Smith (white) by a margin of 54.18% to 45.82%.

108.    Congressional District 1 in 2022 had a BVAP of 41.23%.

109.    In the 2022 general election for Congressional District 1, Democrat Don Davis (Black), defeated Republican Sandy Smith (white) by a margin of 52.37% to 47.63%.

110.    Congressional District 1 in 2024 had a BVAP of 40.42%.

111.    In the 2024 general election for Congressional District 1, Democrat Don Davis (Black), defeated Republican Laurie Buckhout (white) by a margin of 49.52% to 47.84%. Libertarian Tom Bailey (white) received 2.64% of the vote.

Congressional District 1 County Composition

112.    Under the congressional district plan used for the 2002, 2004, 2006, 2008, and 2010 election cycles, Session Law 2001-479, Congressional District 1 contained Bertie, Chowan, Edgecombe, Gates, Greene, Halifax, Hertford, Martin, Northampton, Pasquotank, Perquimans, and Washington Counties.  It also contained part of Beaufort, Craven,  Granville, Jones, Lenoir, Nash, Pitt, Vance, Wayne, and Wilson Counties, including the cities of Greenville in Pitt, Kinston in Lenoir, Goldsboro in Wayne County, and Wilson City in Wilson County.

113.    Under the congressional district plan used for the 2012 and 2014 election cycles, Session Laws 2011-403 and 2011-414, Congressional District 1 contained all of Bertie, Halifax, Hertford, Northampton, and Warren Counties and part of Beaufort, Chowan, Craven, Durham, Edgecombe, Franklin, Gates, Granville, Greene, Lenoir, Martin, Nash, Pasquotank, Perquimans, Pitt, Vance, Washington, Wayne, and Wilson Counties, including the cities of Durham in Durham County, Greenville in Pitt County, Kinston in Lenoir County, Goldsboro in Wayne County, and Wilson City in Wilson County.

114.    Under the congressional district plan used for the 2016 and 2018 election cycles, Session Law 2016-1, Congressional District 1 contained all of Bertie, Edgecombe, Gates, Granville, Halifax, Hertford, Martin, Northampton, Vance,

Warren and Washington Counties, and part of Durham, Pitt, and Wilson Counties, including the cities of Durham, Chapel Hill, Greenville, and Wilson.

115. Under the congressional district plan used for the 2020 election cycle, Session Law 2019-249, Congressional District 1 contained all of Bertie County, all of Edgecombe County, all of Gates County, all of Greene County, all of Halifax County, all of Hertford County, all of Martin County, all of Nash County, all of Northampton County, part of Pitt County, part of Vance County, all of Warren County, all of Washington County, all of Wayne County, and all of Wilson County.

116. Under the congressional district plan used for the 2022 election cycle, Congressional District 1 contained all of Bertie County, all of Chowan County, all of Edgecombe County, all of Franklin County, all of Gates County, all of Greene County, all of Halifax County, all of Hertford County, all of Martin County, all of Nash County, all of Northampton County, all of Pasquotank County, all of Perquimans County, part of Pitt County, all of Tyrrell County, all of Vance County, all of Warren County, all of Washington County, and all of Wilson County.

117. Under the congressional district plan used for the 2024 election cycle, Session Law 2023-145, Congressional District 1 contained all of Bertie County, all of Camden County, all of Chowan County, all of Currituck County, all of Edgecombe County, all of Gates County, part of Granville County, all of Greene County, all of Halifax County, all of Hertford County, all of Lenoir County, all of Martin County, all of Nash County, all of Northampton County,

4864-9622-3998 v.2

all of Pasquotank County, all of Perquimans County, all of Tyrrell County, all of Vance County, all of Warren County, all of Washington County, all of Wayne County, and all of Wilson County.

Eastern North Carolina State Senate Representation – 1984–2024

118.    From 1984 through 1990, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 2, 6, 10, and 11. The Senators elected in those districts during that time period were Marc Basnight (Democrat), Joseph Julian Harrington (Democrat), Robert Lafayette Martin (Democrat), James Earl Ezzell, Jr. (Democrat), James Davis Speed (Democrat), and Frank Winston Ballance, Jr. (Democrat). Senator Frank Winston Ballance, Jr. was Black.

119.    From 1992 through 2000, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 2, 6, 10, and 11. The Senators elected in those districts during that time period  were Marc Basnight (Democrat), Frank Winston Ballance, Jr. (Democrat), Robert Lafayette Martin (Democrat), James Davis Speed (Democrat), Roy Cooper (Democrat), Allen Hewitt Wellons (Democrat), and Albin B. Swindell, IV (Democrat). Senator Frank Winston Ballance, Jr. was Black.

120.    In 2002, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 3, 4, and 11. The Senators elected in those districts during 2002 were Clark Jenkins (Democrat), Robert L. Holloman (Democrat), and Albin B. Swindell, IV (Democrat). Senator Robert L. Holloman was Black.

26

121.    From 2004 through 2010, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 3, 4, and 7. The Senators elected in those districts during that time period were Marc Basnight (Democrat), Clark Jenkins (Democrat), Robert L. Holloman (Democrat), Doug Berger (Democrat), and Edward Jones (Democrat). Senators Robert L. Holloman and Edward Jones were Black.

122.    From 2012 through 2016, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 3 and 4. The Senators elected in those districts during that time period were Clark Jenkins (Democrat), Edward Jones (Democrat), Erica Smith-Ingram (Democrat), and Angela R. Bryant (Democrat). Senators Edward Jones, Erica Smith-Ingram, and Angela R. Bryant are Black.

123.    In 2018, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 3, and 4. The Senators elected in those districts during 2018 respectively were Bob Steinburg (Republican), Erica D. Smith (Democrat), and Milton F. (Toby) Fitch, Jr. (Democrat). Senators Erica D. Smith and Milton F. (Toby) Fitch, Jr. are Black.

124.    In 2020, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 3, and 4. The Senators elected in those districts in 2020 respectively were Bob Steinburg (Republican), Ernestine (Byrd) Bazemore (Democrat), and Milton F.

(Toby) Fitch, Jr. (Democrat). Senators Ernestine (Byrd) Bazemore (Democrat) and Milton F. (Toby) Fitch, Jr. are Black.

125.     In 2022, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 3, 5, and 11. The Senators elected in those districts in 2022 respectively were Norman W. Sanderson (Republican), Bobby Hanig (Republican), Kandie D. Smith (Democrat), and Lisa Stone Barnes (Republican). Senator Kandie D. Smith is Black.

126.     In 2024, Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington Counties were contained in Senate Districts 1, 2, 5, and 11. The Senators elected in those districts in 2024 respectively were Bobby Hanig (Republican), Norman W. Sanderson (Republican), Kandie D. Smith (Democrat), and Lisa Stone Barnes (Republican). Senator Kandie D. Smith is Black.

127.     From 2012 through 2016, Senate Districts 3 and 4 had BVAP's of 52.43% and 52.75% respectively.

128.     In 2018, Senate District 1 had a BVAP of 28.43%, Senate District 3 had a BVAP of 44.35%, and Senate District 4 had a BVAP of 47.46%.

4864-9622-3998 v.2

## II.   CONTENTIONS.

### A.   Plaintiffs

1.  Facts:[7]

a.  Northeastern North Carolina includes a number of counties that are part of what is sometimes referred to as the "Black Belt," a region that today refers to the counties with the largest Black populations in a number of Southern states, including North Carolina.

b.  North Carolina's Black Belt counties, all located in the northeast part of the state, include Bertie, Hertford, Edgecombe, Northampton, and Halifax Counties, each of which have greater than 50% BVAP based on 2020 census data.  Vance, Warren, Martin, and Washington Counties each have greater than 40% BVAP.  Gates and Chowan Counties have a greater than 30% BVAP.

c.  Eight of North Carolina's Black Belt counties have a total population that is majority Black (Bertie, Hertford, Edgecombe, Northampton, Halifax, Vance, Warren, and Washington).  Others have substantial percentages of Black total population, including Martin (42.1%), Chowan (33.6%), and Gates (31.2%).

d.  The Voting Rights Act has historically enabled Black voters in North Carolina's majority-Black counties—Bertie, Edgecombe, Halifax, Hertford, Northampton, Vance, Warren, and Washington—to elect their

---

[7] These factual and legal contentions do not fully incorporate the 2024 elections, which will be addressed in forthcoming supplemental expert reports.

29

candidates of choice in state legislative races. Following the Supreme Court's 1986 decision in *Thornburg v. Gingles*, 478 U.S. 30 (1986), every single one of North Carolina's majority-Black counties was represented by a Black-preferred candidate in the state Senate until 2018. Following the 2018 and 2020 elections, six of the eight majority-Black counties continued to be represented by Black-preferred Senators. Under the maps enacted in 2022 and 2023, however, only Edgecombe County has elected a Black-preferred candidate; the other seven majority-Black Black Belt counties are now represented by Senators preferred by white voters and opposed by Black voters.

e.   After the 2020 census, in November 2021, the North Carolina General Assembly enacted new maps for the state House and Senate. Those maps were never used in an election because the North Carolina Supreme Court enjoined them as unconstitutional partisan gerrymanders and ordered the General Assembly to enact remedial plans. *Harper v. Hall (Harper I)*, 868 S.E.2d 499, 551-52 (N.C. 2022), *overruled on reh'g by Harper v. Hall (Harper III)*, 886 S.E.2d 393 (N.C. 2023); *see Harper v. Hall*, 867 S.E.2d 554 (N.C. 2022) (order preceding issuance of *Harper I*).

f.   The General Assembly adopted a new state House and Senate plans in February 2022. The trial court approved those maps, which were used in the 2022 elections.

4864-9622-3998 v.2

g. The 2022 state Senate plan divided voters in the Black Belt counties between four districts—namely, Senate Districts 1, 3, 5, and 11, which had BVAPs of 17.47%, 42.33%, 40.35%, and 36.65%, respectively.

h. In the 2022 elections, the white-preferred candidate ran unopposed and won in District 1; white-preferred candidates defeated Black-preferred candidates in Districts 3 and 11; and the Black-preferred candidate defeated the white-preferred candidate in District 5.

i. In December 2022, the North Carolina Supreme Court reversed the trial court's remedial order accepting the General Assembly's 2022 state Senate map. *Harper v. Hall (Harper II)*, 881 S.E.2d 156, 181 (N.C. 2022). The Court later withdrew that decision, vacated the trial court's remedial order, and authorized the General Assembly to adopt new state House and Senate maps. *Id.* at 449.

j. The General Assembly released proposed new state House and Senate plans in October 2023.

k. The Southern Coalition for Social Justice submitted a letter and accompanying expert memo provided by Dr. Kassra A.R. Oskooii that analyzed Senate Districts 1 and 2 of the 2022 enacted map and Senate Districts 1 and 3 of the then-proposed 2023 map. The letter reported that racially polarized voting existed in the Black Belt counties, that "all three Gingles preconditions are established in the area covered by Proposed Senate Districts 1 & 2," and that those districts "unlawfully dilute the voting strength of Black voters in northeast North Carolina."

l. The General Assembly did not conduct its own analysis of racially polarized voting in North Carolina as a whole or in any part of North Carolina during the 2023 redistricting process.

m. Without conducting its own analysis of racially polarizing voting in North Carolina as a whole or in any part of North Carolina, the General Assembly enacted the new state Senate plan on October 25, 2023.

n. The 2023 enacted Senate plan divides voters in the Black Belt counties between four districts—namely Senate Districts 1, 2, 5, and 11, which have BVAPs of 29.49%, 30.01%, 40.35%, and 36.65%, respectively.

o. In the 2024 election, white-preferred candidates defeated Black-preferred candidates in Districts 1, 2, and 11, while a Black-preferred candidate defeated a white-preferred candidate in District 5. The 2024 election results mark the second time since Gingles, and the second consecutive election, that the Black Belt counties elected only one Black-preferred candidate.

p. It is possible to draw an additional majority-Black Senate district in northeastern North Carolina while complying with traditional redistricting principles and North Carolina's county grouping rules. Creating such a district can be achieved in multiple different geographic arrangements.

q. Statewide, Black voters consistently back the same candidates by greater than 95%. In 2023 enacted Senate Districts 1 and 2, more than 97% of Black voters typically back the same candidate.

r. Statewide, white voters oppose the Black-preferred candidate by about 70-75%. In 2023 enacted Senate Districts 1 and 2, around 80% of white voters

4864-9622-3998 v.2

typically opposed the Black-preferred candidate between 2016 and 2022. In more recent elections (2020 and 2022), white bloc voting is even more extreme than 80%.

s.   Voting is even more polarized in the 12-county area where a Black-majority district is possible (the Demonstration Area). There, White voters crossed over to support the Black preferred candidate at a rate of 15.7% on average across 2016 to 2022.

t.   In the 2022, 2020, and 2018 election cycles, using results from 31 statewide elections, the Black-preferred candidate wins a majority of the vote 0 out of 31 times in 2023 enacted Senate Districts 1 and 2. If 2016 elections are considered as well, the Black-preferred candidate wins a majority of the vote 6 times out of 49 in District 1 and 5 times out of 49 in District 2.

u.   In addition to the 2023 enacted Senate plan itself, multiple other factors inhibit Black voters' ability to participate equally in North Carolina's political process.

v.   North Carolina has "a long and shameful history of race-based voter suppression" that has denied and abridged voting rights for Black people, sometimes intentionally.  *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 311 (4th Cir. 2020).  This includes historical examples like literacy tests and poll taxes, as well as more recent examples reflected in multiple court decisions striking down North Carolina election laws for discriminating against Black voters.

w.  As described above, North Carolina is characterized by extreme racially polarized voting, both statewide and in enacted Senate Districts 1 and 2 specifically.

x.   As described above, North Carolina has often used voting practices and procedures that tend to enhance the opportunity for discrimination against Black voters.

y.  Black people in North Carolina bear the effects of discrimination in areas that affect voting such as education, socioeconomic well-bring, health, and criminal justice.  Due in part to historical and contemporary discrimination, there are significant gaps between Black and white North Carolinians with respect to educational attainment, unemployment, income, poverty, homeownership, life expectancy, infant mortality, cancer, and diabetes.

z.  There have been numerous instances of both explicit and racial appeals in North Carolina political campaigns, both historically and recently, from the Jesse Helms ads to the 2024 elections which featured, by way of example, a white candidate accusing her Black opponent of spending "his professional life going after white people and Jews."

aa. No Black person has ever been elected Governor, Attorney General, or U.S. Senator in North Carolina. In the Black Belt counties, Black candidates for state House and Senate have typically lost to white candidates when running in majority-white districts.

4864-9622-3998 v.2

bb. In many important respects, the General Assembly has been non-responsive or insufficiently responsive to the particularized needs of Black North Carolinians, both statewide and in the Black Belt counties specifically.

2. <u>Factual issues:</u>

a. The BVAP and Black CVAP of 2023 enacted state Senate Districts 1, 2, 5, and 11, as well as Plaintiffs' demonstration districts.

b. The extent to which a majority of Black voters in Senate Districts 1 and 2 typically back the same candidates.

c. The extent to which white voters in Senate Districts 1 and 2 typically oppose Black-preferred candidates.

d. The extent to which white-preferred candidates usually defeat Black-preferred candidates in Districts 1 and 2.

e. The extent of North Carolina's history of official voting-related discrimination.

f. The extent to which voting in the region is racially polarized.

g. The extent to which North Carolina has used voting practices or procedures that tend to enhance the opportunity for discrimination against Black voters.

h. The extent to which Black people, both statewide and in the Black Belt counties, bear the effects of discrimination in areas that affect voting such as education, socioeconomic indicators, and health.

i. The extent to which there have been overt or subtle racial appeals in North Carolina political campaigns.

j.  The extent to which Black candidates have been elected to public office, both statewide and in the Black Belt counties.

k.  The extent to which there has been a lack of responsiveness on the part of elected officials to the particularized needs of Black North Carolinians.

3. <u>Legal issues:</u>

a.  Whether the first Gingles precondition is satisfied because the Black population in North Carolina's Black Belt counties is sufficiently large and geographically compact to constitute a majority in a reasonably configured single-member district.

b.  Whether the second Gingles precondition is satisfied because Black voters in 2023 enacted Senate Districts 1 and 2 are politically cohesive.

c.  Whether the third Gingles precondition is satisfied because white voters in Districts 1 and 2 vote sufficiently as a bloc to usually defeat Black voters' preferred candidates.

d.  Whether, under the totality of the circumstances, Black people lack equal opportunity to participate in the political process and to elect candidates of their choice.

B.  **Legislative Defendants**

1. <u>Facts:</u>

a.  Article II, Sections 3 and 5 of the North Carolina Constitution specifically enumerate four limitations upon the redistricting and reapportionment authority of the General Assembly as to legislative districts, including that:

a. Each Senator and Representative shall represent, as nearly as possible, an equal number of inhabitants;

b. Each senate and representative district shall at all times consist of contiguous territory;

c. No county shall be divided in the formation of senator or representative districts (the "Whole County Provision"); and

d. Once established, the senate and representative districts and the apportionment of Senators and Representatives shall remain unaltered until the next decennial census of population taken by order of Congress

b. The challenged region of North Carolina has a long legal history with redistricting. During the 1990 redistricting cycle, the United States Supreme Court decided the seminal racial gerrymandering case, *Shaw v. Reno,* 509 U.S. 630 (1993), which involved North Carolina's First Congressional District ("CD1"), which encompassed a large portion of the counties in Northeastern North Carolina. After the 2010 redistricting cycle, the Supreme Court again encountered CD1 in another racial gerrymandering claim, affirming the district court's findings striking CD1 down as a racial gerrymander. *Cooper v. Harris,* 581 U.S. 285 (2017). *Cooper* affirmed the district court's finding that the General Assembly used race as the predominant criterion in configuring CD1 as a majority-Black district, triggering strict scrutiny, *id.* at 299–301, and found that the General Assembly failed to show its use of race was narrowly tailored to Voting

Rights Act compliance. The Court affirmed the finding, rejecting the General Assembly's narrow-tailoring defense because it found the General Assembly had not proven that, under the third *Gingles* precondition, white bloc voting was so strong that a majority-Black district was required to afford equal electoral opportunity to Black voters. *Id.* at 306. Rather, a crossover district (one with less than 50% BVAP) would provide equal minority opportunity. *Id.* The district court in *Covington v. North Carolina,* 316 F.R.D. 117 (M.D.N.C. 2016) made a similar finding regarding certain state legislative districts in Northeastern North Carolina, *e.g.*, *id.* at 142, (SD4), 151 (HD5), and its decision was summarily affirmed by the United States Supreme Court. *North Carolina v. Covington*, 581 U.S. 1015 (2017).

c.  After this series of decisions, the General Assembly declined to consider racial data in remedial districting redraws that occurred in 2017 and 2019.

d.  After receipt of the 2021 decennial census data, the General Assembly passed a senate plan on November 4, 2021, that was likewise drawn without racial data, S.L. 2021-173. In conducting this redistricting process, the General Assembly adopted the 2021 Criteria, which guided enactment of new redistricting plans for North Carolina House and Senate Districts, as well as Congressional Districts. The 2021 Criteria instructed that among other things, North Carolina's redistricting plans must be contiguous, compact, comply with the *Stephenson* criteria, respect municipal and VTD boundaries, and have equal population, or population within +/- 5% for legislative districts. The 2021 Criteria also forbade the consideration of

4864-9622-3998 v.2

partisan or racial data, though member residence and local knowledge of the characteristics of communities could be considered. The General Assembly reviewed the county grouping formula and determined there were two permissible *Stephenson* county groupings for state Senate districts in Northeastern North Carolina, and chose one of them. These are the same two county grouping configurations for the counties in Northeastern North Carolina identified in the Duke Academic Paper.

e. The 2021 Plans were challenged under theories of partisan gerrymandering. In February 2022, the North Carolina Supreme Court struck down the 2021 Plans on claims of partisan gerrymandering in *Harper* I. In a full remedial order issued on February 14, 2022, the North Carolina Supreme Court, for the first time, set forth metrics whereby the partisanship of districts could be measured. *Harper v. Hall*, 380 N.C. 317, 868 S.E.2d 499 (2022) ("*Harper I*"). During the remedial redistricting phase that followed, the General Assembly used partisan data to run the partisanship tests set forth in *Harper* I, subsequently enacting remedial House, Congressional, and Senate plans. While the Remedial House Plan passed with broad bipartisan support, the Remedial Senate Plan received less bipartisan support. However, the Remedial Senate Plan did, at the request of Intervenor-Plaintiff Common Cause, switch the county groupings used for the Senate Districts in Northeastern North Carolina to the alternative county grouping configuration in order to alleviate the alleged partisan gerrymandering. Again, the General Assembly did not use racial data in the 2022 remedial

process. When evaluating the remedial redistricting plans, the trial court and the North Carolina Supreme Court considered whether §2 liability might arise under the remedial plans, and concluded that a polarized voting analysis of Dr. Jeffrey Lewis, who advised the General Assembly, demonstrated that it would not. *Harper* II, 383 N.C. at 123.

f. The three-judge panel also hired three Special Masters who, along with their four advisors, reviewed and produced a report on the Remedial Plans that was based primarily on reports written by the four advisors. The Special Masters found that the Remedial House and Senate Plans met the requirements of *Harper* I, but that the Remedial Congressional Plan did not. After the three-judge panel adopted the findings of the Special Masters in full, the North Carolina Supreme Court affirmed the three-judge panel's order in part and reversed in part in *Harper* II.

g. On January 20, 2023, Legislative Defendants timely filed a petition for rehearing pursuant to Rule 31 of the North Carolina Rules of Appellate Procedure that requested the North Carolina Supreme Court rehear *Harper* II on the basis that the standards set forth in *Harper* I and *Harper* II were unmanageable. The North Carolina Supreme Court granted the petition for rehearing, and ultimately withdrew *Harper* II, overruled *Harper* I, and held that partisan gerrymandering claims are nonjusticiable political questions under the North Carolina Constitution. In accordance with the *Harper* III order, the General Assembly drew new redistricting plans, including the 2023 Senate and House Plans, which passed on October 25, 2023. The

redistricting process did not begin until late summer of 2023 because of ongoing contentious budget negotiations.

h. The 2023 Senate Criteria required that districts be contiguous and compact, comply with the *Stephenson* county grouping rules, and be based on equal population. The 2023 Senate Criteria also mandated that county lines, VTDs, and municipal boundaries could be considered, as well as other traditional districting principles, incumbent residence, and political data. The 2023 Senate Criteria also mandated that data identifying the race of individuals or voters should not be used in the drafting of districts for the 2023 Senate Plan.

i. The General Assembly did not use race to draw the 2023 Senate Plan because it felt that there was insufficient evidence that the *Gingles* preconditions could be met. Only after the 2023 Senate Plan was drawn did the General Assembly allow race to be loaded into a separate system to produce StatPacks with racial information. The General Assembly allowed for and requested input from the public in drawing the 2023 Senate Plan. The General Assembly also sought evidence from the public of any legally significant racially polarized voting. It received none.

j. SD1 and SD2 are single county grouping districts. The SD1 grouping was chosen because it kept intact four of the five finger counties in Northeastern North Carolina, over 80% of the population is in the Norfolk Media Market, and many of the residents in those counties work or travel to the Virginia tidewater area. The SD2 grouping was chosen because it followed the

41

Roanoke River to the Albemarle Sound, while also including both the Pamlico River and Pamlico Sound, and because two-thirds of SD2's counties are in the Greenville Media Market.

k. While ultimately questions for the Court to decide, it is Legislative Defendants' position that Plaintiffs cannot meet their burden of proof under the three *Gingles* preconditions and that the totality of the circumstances weigh in favor of Defendants.

2. <u>Factual issues:</u>

a. Whether the minority group in the challenged districts is sufficiently large and geographically compact to constitute a majority in a single-member district.

b. Whether the minority group is politically cohesive.

c. Whether White voters usually vote as a bloc to defeat the minority group.

d. The extent of any history of official discrimination in the state or political subdivision that touched the right of members of the minority group to register, to vote, or otherwise to participate in the democratic process.

e. The extent to which voting in the elections of the state or political subdivision is racially polarized.

f. The extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group.

g. The extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment, and health, which hinder their ability to participate effectively in the political process.

h. Whether political campaigns have been characterized by overt or subtle racial appeals.

i. The extent to which members of the minority group have been elected to public office in the jurisdiction.

j. Whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group.

k. Whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to vote, or standard, practice or procedure is tenuous.

3. Legal issues:

e. Whether Plaintiffs have standing to challenge Senate District 1 in the 2023 Senate Plan.

f. Whether Plaintiffs have met their burden of proof on the *Gingles* I precondition to show that the Black Voting Age Population in the challenged districts is sufficiently large and geographically compact to constitute a majority in a reasonably configured single-member Senate district.

g. Whether Plaintiffs have met their burden of proof under *Gingles* II to show that Black voters in the challenged districts are politically cohesive.

4864-9622-3998 v.2

h. Whether Plaintiffs have met their burden of proof under *Gingles III* to show that, in the challenged districts, the majority votes sufficiently as a bloc to enable it usually to defeat Black voters' preferred candidates.

i. Whether the totality of the circumstances show that the political process is equally open such that members of the minority group have equal access to the political process and to elect representatives of their choice.

j. Whether the 2023 Senate Plan gives the minority group statewide substantial proportionality.

k. Whether Plaintiffs seek to maximize the number of majority-Black districts or achieve extra-proportionality statewide.

C. **State Board Defendants**

State Board Defendants do not anticipate presenting any factual or legal contentions.

III. **EXHIBITS.**

A. Joint Exhibit List is attached as Exhibit A.

B. Plaintiffs' exhibit list is attached as Exhibit B. Plaintiffs do not necessarily intend to offer into evidence every document disclosed on their exhibit list, and some of the documents disclosed on Plaintiffs' exhibit list would be admissible if offered by Plaintiffs, but not if offered by Legislative Defendants (for instance, because the document contains out-of-court statements that constitute inadmissible hearsay when offered by Legislative Defendants).

C. Legislative Defendants' exhibit list is attached as Exhibit C.

D. State Board Defendants do not anticipate offering any exhibits as part of their case.

4864-9622-3998 v.2

## IV.  DESIGNATION OF PLEADINGS AND DISCOVERY MATERIAL

A.  Amended Complaint, filed on November 22, 2023.

B.  Answer of Legislative Defendants to the Amended Complaint, filed on January 19, 2024.

C.  Answer of State Board Defendants to the Amended Complaint, filed on January 19, 2024.

## V.  WITNESSES.

### A.  **Plaintiffs**

1.  <u>Senator Dan Blue</u> – Senator Blue will testify about North Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

2.  <u>G.K. Butterfield</u> – Congressman Butterfield will testify about North Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

3.  <u>Toby Fitch</u> *(may call)* – Sen. Fitch will testify about North Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

4.  <u>Moses Matthews</u> – Mr. Matthews will testify about his experience as a voter and resident of Northeastern North Carolina, about North Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

5.  <u>Rodney D. Pierce</u> – Mr. Pierce will testify about his experience as a voter and resident of Northeastern North Carolina and as a candidate for office, North

Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

6. <u>Representative Robert Reives, II</u> – Rep. Reives will testify about North Carolina elections and representation of Black voters, the existence of racially polarized voting, and the Senate Factors.

7. <u>Dr. Traci Burch</u> – Dr. Burch will testify about the Senate Factors, and other topics described in her expert reports.

8. <u>Dr. Loren Collingwood</u> – Dr. Collingwood will testify about racially polarized voting, the performance of the enacted districts and the demonstration districts, and other topics described in his expert reports.

9. <u>Blakeman Esselstyn</u> – Mr. Esselstyn will testify about North Carolina's political geography and demographic characteristics and about demonstration districts he has drawn, as well as other topics described in his expert reports.

10. <u>Dr. Jonathan Mattingly</u> – Dr. Mattingly will testify about his algorithm implementing North Carolina's Stephenson rule and its application to the demonstration districts, as well as other topics described in his expert reports.

11. Any witnesses listed by Legislative Defendants or State Board Defendants.

Plaintiffs also reserve the right to call any rebuttal witnesses, should any be necessary. All of Plaintiffs' witnesses may be contacted through Plaintiffs' counsel

### B. **Legislative Defendants**

1. <u>Dr. John Alford</u> – Dr. Alford will testify about the contents of his reports, including a forthcoming supplemental report relating to the 2024 elections, and any reports by Plaintiffs' experts that were referenced in his reports or asked

about in his deposition. Dr. Alford may be contacted through counsel for Legislative Defendants.

2. Dr. Donald Critchlow – Dr. Critchlow will testify about the contents of his reports and any reports by Plaintiffs' experts that were referenced in his reports or asked about in his deposition. Dr. Critchlow may be contacted through counsel for Legislative Defendants.

3. Dr. Andrew Taylor - Dr. Taylor will testify about the contents of his reports and any reports by Plaintiffs' experts that were referenced in his reports or asked about in his deposition. Dr. Taylor may be contacted through counsel for Legislative Defendants.

4. Dr. Sean Trende – Dr. Trende will testify about the contents of his reports and any reports by Plaintiffs' experts that were referenced in his reports or asked about in his deposition. Dr. Trende may be contacted through counsel for Legislative Defendants.

5. Senator Ralph Hise Jr. – Ralph Hise Jr., in his official capacity as Senator and Co-Chair of the Senate Redistricting and Elections Committee, will testify to facts relating to the 2023 redistricting process for the Senate redistricting plan, S.B. 758. Senator Hise may be contacted through counsel for Legislative Defendants.

6. Any witnesses listed by Plaintiffs or State Board Defendants.

Legislative Defendants also reserve the right to call any rebuttal witnesses, should any be necessary.

### C. **State Board Defendants**

State Board Defendants do not anticipate offering any witness unless necessary for rebuttal purposes.

## VI. <u>TRIAL TIME ESTIMATE</u>

The Court has set aside 5 days for trial, and the parties anticipate that trial will take those 5 days.

4864-9622-3998 v.2

Respectfully submitted, this the 20th day of December, 2024.

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/ Elisabeth S. Theodore
    Robert Stanton Jones*
    Elisabeth S. Theodore*
    Samuel I. Ferenc*
    Orion de Nevers*
    601 Massachusetts Ave., NW
    Washington, D.C. 20001
    Telephone: (202) 942-5000
    stanton.jones@arnoldporter.com
    elisabeth.theodore@arnoldporter.com
    sam.ferenc@arnoldporter.com
    orion.denevers@arnoldporter.com

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
    Phillip J. Strach
    North Carolina State Bar no. 29456
    Alyssa M. Riggins
    North Carolina State Bar no. 52366
    Cassie A. Holt
    North Carolina State Bar no. 56505
    Jordan A. Koonts
    North Carolina State Bar no. 59363
    301 Hillsborough Street, Suite 1400
    Raleigh, North Carolina 27603
    Ph: (919) 329-3800
    phil.strach@nelsonmullins.com
    alyssa.riggins@nelsonmullins.com
    cassie.holt@nelsonmullins.com
    jordan.koonts@nelsonmullins.com

**POYNER SPRUILL LLP**

By: /s/ Edwin M. Speas, Jr.
    Caroline P. Mackie
    North Carolina State Bar no. 41512
    Edwin M. Speas, Jr.
    North Carolina State Bar no. 4112
    Post Office Box 1801
    Raleigh, NC 27602
    Telephone: (919) 783-1108
    cmackie@poynerspruill.com
    espeas@poynerspruill.com

**BAKER & HOSTETLER LLP**

By: /s/ Katherine L. McKnight
    Richard B. Raile*
    Katherine L. McKnight*
    Trevor Stanley*
    1050 Connecticut Ave. NW, Suite 1100
    Washington DC 20036
    Ph: (202) 861-1500
    rraile@bakerlaw.com
    kmcknight@bakerlaw.com
    tstanley@bakerlaw.com

**NORTH CAROLINA DEPARTMENT OF JUSTICE**

By: /s/ Terence Steed
    Terence Steed
    Special Deputy Attorney General
    N.C. State Bar No. 52809
    E-mail: tsteed@ncdoj.gov

Patrick T. Lewis*
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Ph: (216) 621-0200
plewis@bakerlaw.com

Erika Dackin Prouty*
200 Civic Center Drive, Suite 1200
Columbus, OH 43215

49

Mary Carla Babb
Special Deputy Attorney General
N.C. State Bar No. 25731
mcbabb@ncdoj.gov

N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602-0629
Telephone:  (919) 716-6567
Facsimile:  (919) 716-6761

*Attorneys for the State Board Defendants*

(614) 462-4710
eprouty@bakerlaw.com

Rachel Hooper*
Texas State Bar no. 24039102
Tyler G. Doyle*
Texas State Bar no. 24072075
811 Main Street, Suite 1100
Houston, Texas 77002
Ph: (713) 751-1600
rhooper@bakerlaw.com
tgdoyle@bakerlaw.com

* *Appeared via Special Notice*

*Attorneys for Legislative Defendants*

4864-9622-3998 v.2

## CERTIFICATE OF SERVICE

I hereby certify that on this day the forgoing document was filed on the Court's electronic case filing system (CM/ECF), and that notice of the filing will be served on all counsel of record by the Court's system.

This the 20th day of December, 2024.

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: /s/ Orion de Nevers
      Orion de Nevers*