IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| RODNEY D. PIERCE and MOSES MATTHEWS, <br><br> Plaintiffs, <br><br> v. <br><br> THE NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Case No. 4:23-cv-193-D |

### LEGISLATIVE DEFENDANTS' MEMORANDUM OF AUTHORITIES ON ANTICIPATED EVIDENTIARY QUESTIONS AND CONTESTED ISSUES OF LAW

NOW COME Defendants Philip E. Berger, in his official capacity as President *Pro Tempore* of the North Carolina Senate, and Destin Hall, in his official capacity as Speaker of the North Carolina House of Representatives (collectively, "Legislative Defendants"), by and through undersigned counsel, and pursuant to Local Civil Rule 39.1 files this Memorandum of Authorities on Anticipated Evidentiary Questions and Contested Issues of Law.

### INTRODUCTION

This matter is set for trial before the Honorable James C. Dever III the week of February 3, 2025, in the United States District Court for the Eastern District of North Carolina on Plaintiffs Rodney D. Pierce and Moses Matthews' claim that a portion of S.B. 758 (S.L. 2023-146) (hereinafter, the "2023 Senate Plan") violated Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 (the "VRA"). Specifically, Plaintiffs seek a declaration that the 2023 Senate Plan violates Section 2 and permanent injunctive relief barring the use of the boundaries of state Senate Districts 1 ("SD1") and 2 ("SD2") as drawn therein from future elections. [D.E. 13 at p. 22].

# CONTESTED ISSUES OF LAW

Pursuant to the Scheduling Order and Local Civil Rules, the parties filed a proposed pretrial order on December 20, 2024, D.E. 92, in which the parties set forth their proposed legal issues. The parties[1] generally do not dispute the applicable legal framework for this Section 2 case: Plaintiffs have the burden of proof to satisfy the three *Gingles* preconditions and must show based on the totality of the circumstances that the political process is not equally open to Black North Carolinians residing in the challenged area. *Allen v. Milligan*, 599 U.S. 1, 18 (2023) (citing *Thornburg v. Gingles*, 478 U.S. 30 (1986)); *Cooper v. Harris*, 581 U.S. 285, 301-02 (2017) (citation omitted). [D.E. 92 at pp. 36, 43-44]. That said, the parties likely disagree on the way in which the *Gingles* preconditions and totality analysis are applied to the facts. Legislative Defendants also raised the issue of whether Plaintiffs have standing to challenge SD1 in the 2023 plan. [*Id.* at pp. 3, 43]. To the extent that these could be construed as contested legal issues, Legislative Defendants provide the following:[2]

## I.  Plaintiffs lack standing to challenge SD1 in the 2023 Senate Plan.

Plaintiffs "bear[] the burden" to satisfy the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). They must prove that they "suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 592 U.S. 53, 58 (2020) (citation omitted). Vote dilution claims are "individual and personal in nature" because an

---

[1] The State Board Defendants did not propose any factual or legal contentions in the pretrial order, as they "do not anticipate presenting any factual or legal contentions" at trial. [D.E. 92 at p. 44].

[2] This Memorandum of Authorities is not intended to comprehensively brief all the legal issues in this case. Nothing in this memorandum is intended to waive any arguments on issues of law or fact that may arise over the course of trial. The purpose of this memorandum is simply to comply with Local Civil Rule 39.1(a)(1).

individual votes only in in his or her district. *Gill v. Whitford*, 585 U.S. 48, 67 (2018). Therefore, standing in vote dilution cases requires a plaintiff's injury to "arise[] from the particular composition of the voter's own district, which causes his vote … to carry less weight than it would carry in another, hypothetical district." *Id.* Thus, vote-dilution injuries are "district specific." *Id.* at 66.

Plaintiffs challenge SD1 and SD2 under Section 2 of the VRA. But neither Plaintiff Rodney Pierce nor Moses Matthews reside in SD1 under the 2023 Senate Plan. [D.E. 92 at p. 3]. As such, Plaintiffs lack standing to challenge SD1 of the 2023 Senate Plan.

## II.     Plaintiffs cannot meet their burden of proof under the three *Gingles* preconditions.

Plaintiffs' illustrative plans do not establish the first *Gingles* precondition, which requires the minority group to be "sufficiently large and compact to constitute a majority in a reasonably configured district." *Gingles*, 478 U.S. at 45-46. Proof of *Gingles* I requires "geographical compactness and numerosity[,]" as well as a "reasonably configured" proposed illustrative district. *Milligan*, 599 U.S. at 18. The numerosity element is not met where "the minority group makes up less than 50 percent of the voting-age population in the potential election district." *Bartlett v. Strickland*, 556 U.S. 1, 12 (2009) (plurality opinion); *see also Hall v. Virginia*, 385 F.3d 421, 428–29 (4th Cir. 2004). The "reasonably configured" element looks to "traditional districting criteria," including maintaining "county lines." *Milligan,* 599 U.S. at 20; *Abrams v. Johnson*, 521 U.S. 74, 92 (1997).

None of Plaintiffs' illustrative districts meet the first *Gingles* precondition. Demonstration Districts A and C are not "reasonably configured" in light of the Whole County Provision ("WCP") in the North Carolina Constitution, N.C. Const. art. II, §3(3), and the county grouping rule under

the WCP[3]. *See Milligan*, 599 U.S. at 18, 20; *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 429 (2006) ("*LULAC*") (quoting *Shaw v. Hunt*, 517 U.S. 889, 917, n.9 (1996)); *Abbott v. Perez*, 585 U.S. 579, 617-18 (2018); *Abrams*, 521 U.S. at 91-92. Demonstration Districts B and D do not have over 50 percent Black Voting Age Population ("BVAP")[4]. *Bartlett*, 566 U.S. at 9, 23 (providing that Section 2 does not require crossover districts).

Additionally, Plaintiffs' illustrative plans fail to establish the second and third *Gingles* preconditions, which require proof that the relevant minority group "is politically cohesive" and that, in the absence of a §2 remedy, a White voting bloc will usually "defeat the minority's preferred candidate." *Allen*, 599 U.S. at 18 (citation omitted); *Voinovich v. Quilter*, 507 U.S. 146, 158 (1993) (quotation omitted); *Christian Ministerial All. v. Sanders*, No. 4:19-cv-00402, 2023 WL 4745352, at *16 (E.D. Ark. July 25, 2023) ("The second and third *Gingles* preconditions are often analyzed together."). "The key inquiry under *Gingles*' third factor, then, is whether racial bloc voting is operating at such a level that it would actually 'minimize or cancel . . . [minority] voters' ability to elect representatives of their choice,' if no remedial district were drawn." *Pierce v. N. Carolina St. Bd. of Elections*, 97 F.4th 194, 212 (2024) (quoting *Covington v. N. Carolina*, 316 F.R.D. 117, 168 (M.D.N.C. 2016), *aff'd*, 581 U.S. 1014 (2017) (Mem.)) (alteration in original); *Johnson v. De Grandy*, 512 U.S. 997, 1020 (1994). "[A] general finding regarding the existence of any racially polarized voting, no matter the level, is not enough" to satisfy the third

---

[3] As briefed at the preliminary injunction stage, Legislative Defendants maintain that *Stephenson v. Bartlett*, 355 N.C. 354, 383, 562 S.E.2d 377, 396-97 (2002) ("*Stephenson I*"), *Stephenson v. Bartlett*, 357 N.C. 301, 309, 582 S.E.2d 247, 251 (2003) ("*Stephenson II*"), and *Pender County v. Bartlett*, 361 N.C. 491, 507, 649 S.E.2d 364, 374 (2007), *aff'd sub nom. Bartlett v. Strickland*, 556 U.S. 1 (2009), provide that the WCP does not give way where Section 2 does not require a majority-Black district.

[4] The same arguments for using BVAP as opposed to Black Citizen Voting Age Population (BCVAP) that were raised at the preliminary injunction stage still apply, *see* D.E. 61 at 31-35. Plaintiffs fail to demonstrate why BCVAP is the appropriate measure.

precondition. *Covington,* 316 F.R.D. at 170; *Pierce*, 97 F.4th at 215 (compiling cases concluding that endogenous elections are the most probative for the *Gingles* III inquiry). Because a remedial district is a 50% plus one BVAP district, *Bartlett*, 556 U.S. at 19, there is no legally significant racially polarized voting if minority-preferred candidates have an equal opportunity to win districts at below 50% BVAP. *Id*. at 18; *Covington*, 316 F.R.D at 168-69. Plaintiffs cannot meet their burden of proof of the relevant local analysis required under *Gingles* III because they cannot prove a BVAP over 50% is needed for Black-preferred candidates to win in SD1 or SD2.

**III.    Plaintiffs cannot meet their burden of proof under the totality of the circumstances.**

If Plaintiffs can show that the three preconditions are met, then they must also show "under the 'totality of the circumstances,' that the political process is not 'equally open' to minority voters." *Milligan*, 599 U.S. at 18 (quoting *Gingles*, 478 U.S. at 45-46); *Cooper v. Harris*, 581 U.S. 285, 301-02 (2017) (citation omitted); *Abbott v. Perez*, 585 U.S. 579, 618-19 (2018). This requires "an intensely local appraisal" guided by the Senate Factors. *Gingles*, 478 U.S. at 36-37. The Fourth Circuit clarified two legal issued raised by Plaintiffs' in their preliminary injunction appeal: First, that Senate Factor 3 "is concerned with whether other voting practices or procedures amplify the discriminatory effect of the challenged voting procedure[,]" and thus looks to the present day electoral structure. *Pierce*, 97 F.4th at 221. And second, Senate Factor 7 considers the successful election of Black candidates statewide, as well as in the challenged districts. *Id.* Analysis of the Senate Factors and other issues under the totality of the circumstances, including whether the 2023 Senate Plans are substantially proportional or whether the illustrative plans seek maximization, will show that Plaintiffs cannot meet their burden of proof. *Brnovich*, 594 U.S. at 669-72; *De Grandy*, 512 U.S. at 1017-18; *United States v. Charleston County*, 365 F.3d 341, 352-53 (4th Cir. 2004).

5

# ANTICIPATED EVIDENTIARY QUESTIONS[5]

## I.  Plaintiffs' "Demonstration District E" materials and anticipated testimony.

On December 18, 2024, the Court granted Legislative Defendants' Motion to Exclude all materials concerning "Demonstration District E" from trial after finding that all material relating to Plaintiffs' Expert Blakeman Esselstyn were improper rebuttal evidence and improper supplementation (hereinafter, the "Exclusion Order"). [D.E. 91]. While the Exclusion Order clearly states that "Plaintiffs' expert reports, insofar as they refer to Demonstration District E, are hereby stricken and plaintiffs are prohibited from offering any evidence relating to Demonstration District E at trial[,]" Plaintiffs' Exhibit List, D.E. 92-2, filed on December 20, 2024 presently contains materials referencing Demonstration District E (PX114, PX116, PX128, PX143-PX147, PX156-158, and PX166-PX168). Legislative Defendants timely objected to these exhibits as hearsay, that their prejudicial nature outweighed their probative value under Fed. R. Evid. 403, and as improper rebuttal evidence that should be stricken under the Exclusion Order. [*See* D.E. 92-2].

In light of the Exclusion Order, Legislative Defendants respectfully request that Plaintiffs provide redacted copies, or copies otherwise marked showing the excluded material, of the rebuttal expert reports of Dr. Jonathan Mattingly (PX114), Dr. Loren Collingwood (PX128), and Blakeman Esselstyn (PX147) with sufficient time for the Legislative Defendants and the Court to review

---

[5] Legislative Defendants provide only authorities and analyses on major categories of anticipated evidentiary questions that remain unresolved after efforts to meet and confer. This memorandum does not include arguments regarding supplemental expert reports and related scheduling concerns in light of NCSBE data delays as provided in D.E. 99, (for which supplemental data is still not available) nor does it capture the entirety of Legislative Defendants' objections, or arguments in response to objections, to evidence that may be presented at trial.  Legislative Defendants reserve the right to raise objections to testimony and documents as they are offered.

6

Case 4:23-cv-00193-D-RN     Document 100     Filed 01/27/25     Page 6 of 16

prior to trial. All other separate exhibits relating to Demonstration District E (PX116, PX143-146, PX156-158, PX166-168) should be treated consistently with the Exclusion Order.[6]

**II.     Plaintiffs' exhibits relating to prior statements of members of the General Assembly and prior legislative acts are improper character evidence.**

Plaintiffs list three categories of potential exhibits involving acts of past and present North Carolina General Assemblies: (1) statements made by former Senate and House Redistricting Chairs regarding the 2010 redistricting cycle (PX178); (2) opinions[7] from cases in prior districting cycles (PX232-PX235); and (3) court cases involving other acts of the General Assembly or other local legislative bodies that have been challenged in federal courts (PX227-PX231, PX236-PX239). These exhibits should be excluded or, in the alternative, limited in their use because, *inter alia*, they constitute improper character evidence under Fed. R. Evid. 404.

Under Federal Rule of Evidence 404(a), "[e]vidence of a person's character is not admissible to prove that the person acted in accordance with that character or trait on a particular occasion." This prohibition ensures that judgments are based on the specific facts of the case rather than assumptions about a party's disposition or prior behavior. *See Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 52 (4th Cir. 1993) ("Attempting to prove conduct by showing a character trait is too general and unreliable a method, and therefore it is excluded."). While character evidence can be admissible in cases where character is an element of the claim at issue, it is not admissible to suggest an inference that the person acted on a particular occasion consistent with prior bad acts. *See id.*

---

[6] Legislative Defendants and Plaintiffs met and conferred via email last week and have not yet been able to reach an agreement but hope to continue working to resolve this question.

[7] Legislative Defendants do not believe that judicial opinions issued in court cases make for proper affirmative exhibits, but at this stage of the litigation, are unsure how Plaintiffs might use the exhibits at trial.

To the extent that Plaintiffs seek to use PX178 and PX227-239 to prove that Legislative Defendants acted in conformity with prior conduct, these exhibits should be excluded because the intent or motives of Legislative Defendants or the General Assembly in passing the 2023 Senate Plan are not at issue in this case. Plaintiffs only allege a VRA §2 vote dilution claim, which only requires proof of discriminatory effects. *Allen v. Milligan*, 599 U.S. 1, 13 (2023) (discussing 1982 amendment to Section 2 as including "the effects test that many desired but also a robust disclaimer against proportionality"); *Brnovich v. Democratic National Committee*, 594 U.S. 647, 672-73 (2021).

Furthermore, "[a] legislature's past acts do not condemn the acts of a later legislature, which [the Court] must presume acts in good faith." *N. Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 298 (4th Cir. 2020). Many of the proposed exhibits reference acts of prior members of the General Assembly who are no longer legislators and are not parties to this case, as well as actions by county-level districting authorities whose actions cannot be imputed on Legislative Defendants. *See id.* Even so, in cases where Legislative Defendants were parties, the same principles apply. *Raymond*, 981 F.3d at 303-04 (discussing *Abbott v. Perez*, 585 U.S. 579, 603-04 (2018)). Plaintiffs' exhibits relating to prior statements of members of the General Assembly and prior legislative acts are improper character evidence and should be excluded or, in the alternative, limited in their use because they constitute improper character evidence.

### III. Plaintiffs' exhibits involving the undisclosed and untimely expert analyses of Dr. Kassra A.R. Oskooii.

Plaintiffs list as potential exhibits materials submitted by the Southern Coalition for Social Justice ("SCSJ") during the 2023 redistricting process, including letters from counsel that attach and/or reference a purported expert report of Dr. Kassra A.R. Oskooii. (PX179, PX190, PX211). The letters themselves might be admissible for non-hearsay purposes. However, Dr. Oskooii's

analyses and report opining on racially polarized voting are inadmissible on several grounds, including but not limited to the fact that Plaintiffs did not disclose Dr. Oskooii as an expert in this case.[8] Both Dr. Oskooii's report and the SCSJ attorneys' references to and interpretations of Dr. Oskooii's report in the letters themselves, are inadmissible and should be excluded as improper and untimely expert analyses.

Rule 26 "anticipates that litigants will disclose expert evidence necessary to support their case-in-chief in the initial round of expert disclosures." *United States ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6542730, *3 (C.D. Cal. June 29, 2016). Rule 26 requires parties to produce, in their initial expert disclosure, "a complete statement of all opinions the witness will express and the basis and reasons for them," together with "the facts or data considered by the witness in forming them," and other items required by Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). A litigant who "fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005) (quotation omitted). It is undisputed that Plaintiffs did not disclose Dr. Oskooii as an expert in this case. It is also undisputed that Legislative Defendants never received any backup data from Plaintiffs regarding Dr. Oskooii's analyses during discovery, and were never given the opportunity to depose Dr. Oskooii in this case. Legislative Defendants would be greatly prejudiced if Plaintiffs were permitted to introduce and rely on Dr. Oskooii's analyses at this late stage. Plaintiffs cannot now surprise Legislative Defendants by sneaking in Dr. Oskooii's undisclosed expert report as evidence at trial.

---

[8] Dr. Oskooii has been disclosed as an expert for Plaintiffs in *Williams v. Hall*, 1:23-cv-1057, D.E. 82-12 (M.D.N.C. Jan. 7, 2025), with a full new report.

Furthermore, because of the failure to disclose, Plaintiffs cannot meet their burden of proof under Federal Rules of Evidence 702, 703 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny to qualify Dr. Oskooii's opinions as an expert. These rules require expert opinions to be: (1) helpful to "understand the evidence or determine a fact at issue;" (2) "based on sufficient facts or data;" (3) "the product of reliable principles and methods;" and (4) the product of "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The 2023 Amendment to Rule 702, which took effect on December 1, 2023, makes clear that the proponent of the expert testimony has the burden to prove each of these factors by a preponderance of the evidence. *Id.* Plaintiffs cannot meet that burden here because they do not intend to call Dr. Oskooii as an expert. [*See* D.E. 92 at 45-46]. Dr. Oskooii's report and the accompanying SCSJ attorneys' letters are inadmissible and should be excluded.

**IV.    Plaintiffs' exhibits involving the 2023 Congressional plan and prior districting cycles confuse the issues.**

Lastly, several of Plaintiffs' exhibits involve emails from third-party lay persons relating to the 2023 Congressional plan (PX191-PX193, PX196-PX199). These exhibits, along with the previously mentioned exhibits containing statements and court cases from prior districting cycles (PX178, PX233-PX235), should be excluded on the grounds that they confuse the issues under Fed. R. Evid. 403. *United States v. Abel*, 469 U.S. 45, 54 (1984).

First and foremost, the exhibits relating to the 2023 Congressional plans were not produced in this case (*see* PX191-PX193, PX196-PX199). They were used by counsel in *Williams v. Hall*, M.D.N.C. No. 1:23-cv-1057, during the joint two-day deposition[9] of Senator Hise to show

---

[9] All sets of counsel agreed to this two-day deposition structure. Plaintiffs' counsel in this case questioned Senator Hise on the first day, and counsel in *Williams v. Hall*, No. 1:23-cv-1057 questioned Senator Hise

potential alternatives to the 2023 Congressional plan submitted by lay persons and commentary from other third parties on the process of drawing the same. While it is unclear for what reason Plaintiffs might try to introduce these hearsay emails at trial, such evidence is of limited relevance because only two state Senate districts (SD1 and SD2) in the 2023 Senate Plan are at issue in this case. On the other hand, conflating the considerations made in drawing state Senate districts with Congressional districting is likely to confuse the issues because different criteria and requirements apply to the drawing of legislative and Congressional maps. For example, the North Carolina Constitution's Whole County Provision only applies to state legislative districts. See N.C. Const. art. II, §§ 3, 5. Similarly, statements and court cases from prior districting cycles before 2020 are of limited relevance in this Section 2 effects case, but have the tendency to confuse the issues and, potentially, unnecessarily impede upon the presumption of legislative good faith. *Raymond,* 981 F.3d at 303-04.

That said, resolution of this anticipated evidentiary issue, along with similar objections made by Legislative Defendants to Plaintiffs' exhibits, are dependent on the circumstances and context in which the exhibits are offered. Legislative Defendants submit that their remaining Rule 403, hearsay, relevance, authentication, and other miscellaneous objections to Plaintiffs' exhibits that are not included in this memorandum should be handled at trial as they arise.

**V.     Plaintiffs' objections to Legislative Defendants' legislative hearing exhibits are without merit.**

Plaintiffs object to LD008-LD012, which are certified transcripts of the legislative hearings involving the passage of S.B. 758, and LD066-LD070, the publicly available audio files from which the certified transcripts are derived, as inadmissible hearsay and take the extraordinary

---

on the next. The parties further stipulated that the transcripts from the entirety of the two-day deposition could be used in both cases.

position that Legislative Defendants should not be allowed to enter these transcripts into evidence under the sword-and-shield doctrine because certain declarants in the hearings invoked legislative privilege. [D.E. 92-3 at 2, 4]. Both of these objections fail.

First, videos and transcripts of legislative hearings and agency reports posted on the General Assembly's official website are admissible under the public records hearsay exception, Fed. R. Evid. 803(8). The legislative hearings are statements of a public office's activities—specifically the publicly-available testimony and rationales given for why a bill becomes law—that are maintained in the regular course of governmental operations, reinforcing their reliability and trustworthiness in legal proceedings. *United States v. Childress,* 24 F. App'x 139, 142 (4th Cir. 2001); *see* Fed. R. Evid. 803(8). Thus, the burden is on Plaintiffs to show that "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Plaintiffs cannot make that showing. Plaintiffs have had possession of the bates-stamped legislative transcripts that Legislative Defendants produced in discovery since approximately August 2024[10]. The court reporting company used to transcribe the legislative hearings, Discovery Court Reporters and Legal Videographers, LLC, is the same company that the parties have previously used to transcribe legislative proceedings in many prior cases. In fact, in the *Harper* litigation in 2021, plaintiffs represented by the same counsel here affirmatively used transcripts by the same court reporting company compiled from audio recordings of legislative hearings and

---

[10] Legislative Defendants attached, and quoted with pin cites, portions of the transcript from the October 19, 2023, Senate Redistricting and Elections Committee hearing to their Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction. [D.E. 39 and 39-5]. Plaintiffs did not object to Legislative Defendants' use of the transcript in their Reply brief or at any time during the preliminary injunction hearing. [*See* D.E. 42 (Plts. Reply); 67 (Hearing Transcript)]. In fact, the Court relied upon the October 19, 2023, Committee hearing transcript in its Order denying Plaintiffs' Motion for Preliminary Injunction. [D.E. 61 at p. 8 (citing D.E. 39-5)]. This Court has already accepted legislative testimony contained in one of the certified legislative transcripts as fact [*Id.*], yet Plaintiffs object to the full, bates-stamped version of that exact same transcript now. *See* LD008 (Senate Redistricting & Elections Committee Tr. 10.19.2023).

placed the transcripts on their own exhibit list[11]. At no time during discovery did Plaintiffs indicate that any errata sheets were necessary for the certified transcripts, or that the audio files were otherwise unintelligible. Absent any circumstances that indicate a lack of trustworthiness, LD008-LD012 and LD066-LD070 fall within the public records exception to hearsay under Fed. R. Evid. 803(8).

Plaintiffs' objections regarding the sword and shield doctrine as to the legislative hearing exhibits also fail. At base, Plaintiffs claim that Legislative Defendants cannot offer the publicly available hearing transcripts or videos into evidence because only Senator Hise has waived legislative privilege in this case.

The sword and shield doctrine forbids the use of a testimonial privilege "as both a sword and a shield." *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999); *see also In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008); *Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011). The doctrine holds that a litigant "may not use [a] privilege to prejudice his opponent's case or to disclose some selected [privileged information] for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Legislative privilege is a testimonial privilege, which the Fourth Circuit has adopted a broad interpretation of. *See, e.g.*, *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996). This view recognizes that because state legislators are often subjected to "political wars of attrition in which their opponents try to defeat them through litigation rather than the ballot box," legislators' internal deliberations are

---

[11] Indeed, transcripts of audio files that are part of the legislative record are often used in redistricting cases for convenience of all parties and the court. For example, it is often overly burdensome to cite down to the particular minutes and seconds of the hours-long audio in pre and post-trial briefing, and would be difficult to file these video files, and include them in any appellate record. It is equally burdensome for the Court to have to locate evidence in a particular video when transcripts are available. Furthermore, the audio files and other legislative record materials posted on the General Assembly's website are judicially noticeable as they are part of the official legislative record. *See, e.g.*, *Hall v. Virginia*, 385 F.2d 421, 424 n.3 (2004).

generally protected from the intrusions of discovery. *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011) ("Legislative immunity's practical import is difficult to overstate [and] Legislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity"). However, legislative privilege has never been construed to apply to public statements made on the legislative floor or publicly in committee because such communications are not part of the protected internal deliberations. *See N. Carolina State Conf. v. McCrory*, No. 1:13CV658, 2015 WL 12683665, at *7 & n.5 (M.D.N.C. Feb. 4, 2015). The publicly available legislative hearing audio and certified transcripts of the same cannot be used as a "sword" because it was not privileged in the first instance.

Furthermore, Legislative Defendants do not use legislative privilege as a shield that wholly blocked discovery into creation of the 2023 Senate Plan as Plaintiffs claim. Unlike cases in other circuits where legislators have treated legislative privilege as an absolute immunity, Legislative Defendants have not wholesale refused to produce any discovery relating to the passage of the Senate Plan. Senator Hise waived legislative privilege for the purposes of this action, timely responded to a document subpoena served on him in his official capacity, and was deposed in a joint two-day deposition in this case and *Williams v. Hall*, M.D.N.C. No. 1:23-CV-1057. Senator Hise was subjected to approximately sixteen hours of questioning and multiple attorneys were given the opportunity to jointly ask him about the development of the 2023 Senate Plan.

Respectfully submitted, this the 27th day of January, 2025.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
    Phillip J. Strach
    North Carolina State Bar no. 29456

Alyssa M. Riggins
North Carolina State Bar no. 52366
Cassie A. Holt
North Carolina State Bar no. 56505
Jordan A. Koonts
North Carolina State Bar no. 59363
301 Hillsborough Street, Suite 1400
Raleigh, North Carolina 27603
Ph: (919) 329-3800
phil.strach@nelsonmullins.com
alyssa.riggins@nelsonmullins.com
cassie.holt@nelsonmullins.com
jordan.koonts@nelsonmullins.com

**BAKER & HOSTETLER LLP**

By: /s/Katherine L. McKnight
Katherine L. McKnight*
D.C. Bar No 994456
1050 Connecticut Ave. NW, Suite 1100
Washington DC 20036
Ph: (202) 861-1500
kmcknight@bakerlaw.com

Patrick T. Lewis*
Ohio State Bar no. 0078314
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Ph: (216) 621-0200
plewis@bakerlaw.com

Erika Dackin Prouty*
Ohio State Bar No. 0095821
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 462-4710
eprouty@bakerlaw.com
*Appeared via Special Notice*

*Attorneys for Legislative Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this day the forgoing document was filed on the Court's electronic case filing system (CM/ECF), and that notice of the filing will be served on all counsel of record by the Court's system.

This the 27th day of January, 2025.

                                     **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                                     By: /s/ Phillip J. Strach
                                            Phillip J. Strach
                                            North Carolina State Bar No. 29456